# Cincinnati, New Orleans & Texas Pacific Railway Company v. Cecil.

(Decided April 28, 1915.)

## Appeal from McCreary Circuit Court.

1. Malicious Prosecution—Unlawful Arrest—Malice—How Instruction Should Define.—In defining malice in a case of malicious prosecution or unlawful arrest, the jury should be instructed that it is the intentional doing of a wrongful act, to the injury of another, with an evil or unlawful motive or purpose.

2. Malicious Prosecution—Damages for Physical Pain and Suffering —When Not Recoverable in an Action for Malicious Prosecution or Unlawful Arrest.—Where, in an action to recover damages for a malicious prosecution or unlawful arrest, the evidence fails to show that there was physical discomfort, pain or suffering resulting from the arrest, it was error to instruct the jury that they might allow the plaintiff damages therefor.

3. Malicious Prosecution—Special Damages—When Recoverable.— Special damages, such as expenses reasonably incurred and a reasonable attorney's fee expended in making defense against the unlawful arrest or malicious prosecution, if properly pleaded and proven, may be recovered.

4. New Trial—When Newly Discovered Evidence Will Authorize the Granting of.—Whilst a new trial will not be granted on the ground of newly discovered evidence which is merely cumulative in character, or corroborative of what was testified to by other witnesses, yet if the newly discovered evidence is of a decisive and controlling character the rule is changed, and in such case the newly discovered evidence, if there is no want of diligence on the part of the party applying for the new trial in discovering it, will authorize the granting of a new trial. Applications for a new trial are addressed to the sound discretion of the court, to be exercised according to the rules and usages of law, and the court should regard the substantial justice of the case, equally remote from favoring negligence or exacting unreasonable diligence.

EDWARD COLSTON, JOHN GALVIN and TYE, SILER & GAT-LIFF for appellant.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment of the McCreary Circuit Court, entered upon a verdict awarding the appellee, E. B. Cecil, $500.00 damages against the appellant, Cincinnati, New Orleans & Texas Pacific Railway Company, for his alleged false arrest and malicious prosecution by direction of the latter.

The arrest complained of was made December 24, 1912, while the appellee was a passenger on one of appellant's trains, on his way from Somerset to his home at Stearns, this State. The arrest was made by Henry Vanover, a deputy sheriff in and for the county of McCreary, who, on the night following the arrest, and within a few hours thereof, permitted appellee to give bail for his appearance before R. C. Tarter, judge of the Pulaski County Court, at Somerset, December 26, 1912. On the latter date the county judge, upon an affidavit filed by Vanover, issued three warrants against the appellee; the first charging him with carrying concealed upon his person a deadly weapon, the second for drunkenness upon a passenger train, and the third for disorderly conduct committed while a passenger on the train. By agreement of the parties, the Commonwealth and appellee, the prosecutions were continued until January 15, 1913, for trial, on which date appellee was tried by the county judge under each of the three warrants mentioned, each trial, as shown by the judgment entered therein, resulting in his acquittal.

It was alleged in the petition: That appellee's arrest by Vanover was procured by one Thomas Chestnut, the conductor in charge of the train upon which he was a passenger, unlawfully, maliciously and without probable cause; that by reason thereof appellee suffered great mental and physical pain and anguish and was injured in his reputation; that he suffered a loss of wages amounting to $5.00 by reason of his attendance at the trials, and was compelled to employ attorneys and pay them a fee of $15.00 in making his defense therein; and, also, to expend in railroad fare in going to and from the place of trial $2.50, and $2.50 for board while attending the trials, which sums were reasonable and customary; and, in addition, that in being removed from the train by Vanover he was compelled to leave thereon and in the possession of the appellant two suit cases and merchandise contained therein, which were never returned by appellant and were lost to him, and that these suit cases and their contents were reasonably worth the sum of $22.50. The total damages claimed in the petition was $1,847.50. The material averments of the petition were specifically denied by the appellant's answer.

The testimony of appellee and that of Charles Dupee, Oscar Ross, Edgar Ross, and Lee Thomas, the witnesses

introduced in his behalf, conduced to prove that after entering the train at Somerset appellee took a seat in the smoking car, but later went into the ladies' car, carrying his two suit cases with him, and upon entering that car took a seat with some men of his acquaintance; that shortly thereafter the deputy sheriff, Vanover, went from the smoking car into the ladies' car and upon reaching the seat occupied by appellee slapped him on the shoulder and remarked, "By G—, get out of this car;" that appellee said, "Are you talking to me?" and Vanover said he was, and with one hand shoved appellee, in doing which he partly drew a pistol with the other; that thereupon appellee caught him by the wrist of the hand holding the pistol and by the throat, pushed him backwards across the aisle upon a seat, and held him there until the flagman of the train, Steins, came up and took possession of Vanover's pistol, which ended the struggle; that shortly thereafter the conductor entered the car and told Vanover to arrest appellee, and Vanover then said, "You are under arrest." According to the further testimony of appellee and his witnesses, his detention by Vanover continued from that time until they left the train at Pine Knot, where appellee was permitted to give bail for his appearance two days later before the county judge. There were three or four ladies in the car and some children at the time of appellee's arrest.

Thomas Chestnut, the conductor, in giving his testimony, denied that he requested or directed Vanover to arrest appellee, but said that Mrs. Trimble and Mrs. Lewis, two ladies who were in the car with the appellee, the former having four of her children with her, complained to him shortly before the arrest of the misconduct of appellee and three other men sitting with him, but as appellee and his associates were quiet while he remained in the ladies' car, he then said nothing to them. He went, however, from the ladies' car into the smoker to Vanover, and requested him to go into the ladies' car and watch appellee and his associates and quiet them if they were guilty of any misconduct, and that when he again went into the ladies' car he learned from Vanover and others present that he had arrested appellee for being guilty of profane language and disorderly conduct, and saw him search appellee for weapons; that when appellee left the train at Pine Knot in charge of Vanover he said nothing to the witness about his two suit

cases, and that he had not seen appellee in possession of the two suit cases, and did not know that he had such baggage with him.

Vanover testified, in substance, as follows: That he was a passenger on the train in question, and while sitting in the smoking car Bruce Trimble, the husband of the Mrs. Trimble who was in the ladies' car with her children, entered the smoking car and informed him that some men in the ladies' car were raising a disturbance, and about the same time the conductor, Chestnut, told him some ladies had complained to him that a bunch of fellows in the ladies' car were raising some disturbance, and requested him to go in there and see if he could keep them quiet, whereupon he went into the car and there found the appellee, Lee Thomas, John Dupee, and Charles Dupee, occupying seats facing each other; that they were talking loud and singing; that he went to them and said, "Boys, please be quiet and respect the ladies," whereupon the appellee said, "What in the hell did I have to do with it," to which Vanover replied, "Hold on and I'll tell you what I have to do with it;" that when this was said appellee jumped up and grabbed him by the throat and arm, and in the scuffle he was thrown down over the seat by appellee and John Dupee, where they held him until Steins, the flagman, came in. After being released by Steins, Vanover told appellee and others of the party that he would have to arrest them and that they might consider themselves under arrest. According to Vanover's further testimony, the conductor entered the car about the time he told appellee and his associates that they were under arrest, but he was not requested at any time by the conductor to make the arrest, nor did the latter at any time arrest them or take any part in their arrest by Vanover. Vanover also testified that when the train stopped at Cumberland Falls, Thomas, one of the party arrested, made his escape, but that he took the others on to Pine Knot, where he permitted them to give bond and thereby secure their release. Vanover admitted that he had drunk some beer that day in Somerset, but stated that he was not intoxicated.

John Steins, the flagman, testified to the boisterous conduct of the appellee and some of his associates, but said that Thomas, one of the party, was the only one he heard singing. He did not hear what occurred between

Vanover and appellee preceding the difficulty, but his attention was attracted by the struggle and he ran to where they were, and seeing Vanover trying to get his pistol out took it from him. At that time Vanover was down on the seat and Cecil on top of him. He also testified that the arrest of appellee and his associates by Vanover immediately followed the difficulty. According to his further testimony appellee and the members of his party seemed to be under the influence of intoxicants.

Robert Inman, Mrs. Bruce Trimble and Mrs. T. A. Lewis, who. were passengers on the train and in the ladies' car, testified that appellee and the party sitting with him had the appearance of being somewhat intoxicated; and that they talked in a loud tone and all sang. According to the testimony of Mrs. Trimble, they were singing and carrying on like boys drinking, and talking loud. She knew appellee and had no difficulty in naming him as one of the persons guilty of this misconduct; and though he was then unknown to Mrs. Lewis, she in giving her testimony was able to identify him as one of the persons guilty of .disorderly conduct on the train. Mrs. Trimble also corroborated the conductor as to her making complaint to him of the misconduct of these parties before the arrest occurred, and she, Mrs. Lewis, and Inman corroborated Vanover as to what occurred at the time of his difficulty with appellee, except that they did not hear what was said by either party before the struggle began.

We think it apparent, from the evidence as a whole, that appellee and the men sitting with him in the ladies' car were all more or less under the influence of intoxicants, and appellee confessed in testifying that he had taken two or more glasses of beer before leaving Somerset.

While numerous grounds were urged by appellant for a new trial in the court below, we regard only two of them material in determining whether it is entitled to the reversal asked on this appeal, viz: the complaint of error in the instructions, and that as to the refusal of a new trial on account of newly-discovered evidence.

There were eight instructions given, and objection is made by appellant's counsel to each of them except No. 8. In view of the issues made by the pleadings and proof, we regard instructions 1, 2, 3 and 4 substantially correct. Instruction No. 5 is as follows:

"By the word 'malice' is meant the doing of a wrongful act without reasonable excuse or justification therefor."

An instruction in these words was held erroneous by us in the cases of Ahrens & Ott v. Hoeher, 106 Ky., 692; Metropolitan, etc. v. Miller, 114 Ky., 754; Keiner v. Collins, 161 Ky., 696. In defining malice in a case of malicious prosecution the jury should be instructed that it is the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive of purpose.

Instruction No. 6, defining the measure of damages, can be made substantially correct by striking therefrom so much thereof as would permit the recovery of damages for physical pain and suffering, there being no evidence in the record conducing to show that appellee was subjected to any bodily suffering or physical pain by reason of the arrest or prosecution complained of.

Instruction No. 7, which attempts to define the measure of recovery as to certain matters of special damage claimed in the petition, does not correctly state the law, but may be made to do so by giving it in the following language:

"If your verdict is for the plaintiff, you may, in addition to such damages, if any, as you may award him under instruction No. 6, find for him the reasonable value, if any, not to exceed $22.50, of the two suit cases and their contents, if you believe from the evidence they were lost and plaintiff deprived of them by reason of the conduct of the defendant company complained of, and not by any fault of the plaintiff, and the reasonable value, not to exceed $5.00, of such time, if any, as the evidence may show was lost by plaintiff in attending the trial of the prosecutions against him, and also the amount, if any, of such reasonable attorney's fee, not exceeding $15.00, as the evidence may show was necessarily paid by plaintiff for his defense in the prosecutions aforesaid; provided, that your finding upon the whole case cannot exceed $1,847.50, the amount claimed in the petition."

It appears from the affidavit of H. H. Tye, one of appellant's counsel in this case on the trial in the court below, that after the trial and during the same term of the court at which it occurred, he discovered that Jonah Foster, Scott Foster, Edgar Ross and Walker Porter,

had they been subpoenaed as witnesses for the trial, would have testified that the appellee, Cecil, on the night following his arrest did learn what became of the two suit cases and their contents, for the alleged loss of which he claimed the sum of $22.50 in this action; and that the contents thereof, consisting of beer and whiskey, was divided between Jonah Foster, Scott Foster, Edgar Ross and Walker Porter by Ross and Porter, who had possession of the suit cases and their contents, Ross, by direction of appellee, having taken possession of the suit cases and removed them from the train after the latter left the train following his arrest; and, furthermore, that a few days thereafter, and before the institution of this action, appellee collected of the parties named $15.00 in full payment for the two suit cases and their contents. The affidavit of Tye fully sets forth the relevancy and importance of this testimony to the defense of appellant in this action; that upon another trial of the case the persons named above would testify to the facts mentioned, and that such testimony was, and would be when given, true; moreover, that the facts in the possession of the persons named were not disclosed by them until after the trial and the recovery of a verdict and judgment by the appellee in this case, for which reason it was not known to and could not have been discovered by appellant or its counsel before the conclusion of the trial.

The affidavits of Jonah Foster and Edgar Ross, containing substantially the same facts stated in that of the counsel, Tye, were filed in support thereof, and, together with that of Tye, were introduced and read on the hearing of the motion for a new trial.

It is reasonably certain from the statements of these affidavits that the attendance and testimony of the witnesses, or some of them, named therein can be obtained in the event of another trial of the case, and the importance of the testimony is beyond doubt. It will not only contradict and discredit the testimony of appellee as to the loss of the suit cases and contents, but also his testimony as to what their contents consisted of. He testified on the trial that after his arrest he was compelled to leave the train without the suit cases; that one of them contained dolls he had purchased in Somerset for his children and the other articles of merchandise of various kinds he had there obtained for his family,

whereas, the affidavits of Jonah Foster and Edgar Ross show that they will testify the suit cases contained beer and whiskey, and that when appellee was taken from the train following his arrest, he left the suit cases and contents in charge of Ross. In addition, the affidavits demonstrate the readiness of both Foster and Ross to testify on another trial, and with apparent truthfulness, that the contents of the suit cases were consumed by them and others, and that appellee knew this fact and was fully compensated for the suit cases and contents before he instituted this action; which, if true, would take from the case one element of damage claimed in the petition and allowed by the verdict recovered by appellee.

It is also manifest from the affidavits that no kind of effort or diligence on the part of appellant would have enabled it to discover the evidence in question before or during the trial of this case in the circuit court; and further manifest that the newly-discovered evidence is not cumulative, but of such a character as to be practically decisive of the lack of merit in the claim to damages asserted by appellee for the loss of his suit cases and contents. In Torian, etc. v. Terrill, 122 Ky., 745, which is one of the later decisions of this court on the subject under consideration, we find this statement of the law:

"The rule that newly-discovered evidence which is merely cumulative is not ground for a new trial allows of some exceptions. For instance, the rule does not apply if the newly-discovered evidence, though cumulative, is sufficient to render clear that which was before a doubtful case, or if it is of a conclusive or decisive character, or of so controlling a character it would probably change the verdict. * * * Applications for a new trial are addressed to the sound discretion of the court, to be exercised according to the rules and usages of law, and the court should regard the substantial justice of the case, equally remote from favoring negligence or exacting unreasonable diligence."

In I. C. R. Co. v. Wilson, 31 R., 789, quoting from numerous other authorities, we said:

"Whilst a new trial will not be granted on the ground of newly-discovered evidence which is merely cumulative in character, or corroborative of what was testified to by other witnesses, yet, if this newly-discovered evidence

is of a decisive and controlling character, the rule is changed." Adams Oil Co. v. Stout, 19 R., 758; Johnson v. Stevens, 95 Ky., 128; Berberich v. Louisville Bridge Co., 20 R., 467; Owsley v. Owsley, 25 R., 1186.

We are clearly of opinion that the newly-discovered evidence referred to entitled appellant to the new trial asked in the court below, and the refusal of that court to grant it constitutes reversible error.

If, upon a retrial of the case, the newly-discovered evidence is introduced in appellant's behalf and it should be of the character and effect stated in the affidavits filed in support of the motion for a new trial, and no other evidence is introduced by appellee as to the alleged loss of his suit cases and contents than was furnished by him on the first trial, it will be the duty of the court to instruct the jury to allow him no damages as to that item. On the other hand, should he introduce additional evidence on that question, conducing to prove the loss to him of the suit cases and contents by the conduct of appellant complained of, the court, in that event, should give the jury instruction No. 7 in the form above directed by the opinion.

For the reasons indictated the judgment is reversed and cause remanded for a new trial consistent with the opinion.