# W. A. Wickliffe Coal Company v. Ryan.

(Decided December 15, 1931.)

538

EAVES & SANDIDGE for appellant.

W. O. SMITH for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In this action by Willie H. Ryan against the W. A. Wickliffe Coal Company to recover for personal injuries, the jury returned a verdict in his favor for $600. The coal company appeals.

The facts are these: Appellant owns and operates a coal mine in Muhlenberg county. About 150 feet distant from the mouth of the mine pit appellant maintains a blacksmith shop for the purpose of sharpening bits, picks, etc., and doing other blacksmith work. The forge is located near the door, and about 35 feet from the back end of the shop. Ryan was employed in the mines as a loader. On the day of the accident it was raining, and the walkway from the mouth of the mine pit to the blacksmith shop was unprotected. After finishing his day's work, Ryan went to the blacksmith shop for the purpose of leaving his pick to be sharpened the next morning. About two hours before he arrived appellant had sent a number of empty carbide cans to the shop to be used by the smith for divers purposes. Some of the cans were stacked in the rear of the shop. When Ryan arrived about 4:30 p. m., he had on his cap, and his carbide lamp was burning. He passed the forge and went back into the rear of the shop where his boots were hidden. While there the gas from the carbide came in contact with the light on his cap and caused an explosion that resulted in his injuries. There was evidence by Ryan and others that it had been the custom of the mine for a number of years for the miners to go into the blacksmith shop for the purpose of leaving their picks to be sharpened, and that the picks were placed or hidden anywhere in the shop. On the other hand, the evidence for appellant was to the effect that the custom of the mine was that the miners placed their picks on the forge, or on the ground near the forge, and that none of the miners ever placed their picks at other places in the shop. It was further shown that Ryan admitted to two or three witnesses that the explosion was caused by the water falling from his

cap on the carbide, and that he went into the shop for the purpose of getting his boots.

It is first contended that the petition is fatally defective in that it alleged that appellee was injured after he had completed his day's work, thus showing that he was not engaged in the performance of any duty owing to his employer. If this had been all, there would be merit in the contention. But the petition went further and pleaded that it was the custom of the mine for the men to leave their picks in the shop to be sharpened, and that appellee went there for that purpose, thus disclosing a situation where appellant was charged with anticipating appellee's presence in the shop, and was therefore under the duty to use ordinary care to provide him a reasonably safe place in which to carry out his purpose.

Though appellant's failure to elect to operate under the Workmen's Compensation Act deprived it of the common-law defenses of contributory negligence and assumed risk, appellant was not liable in the absence of negligence, Kentucky Statutes, sec. 4960; Horse Creek Mining Co. v. Frazier's Adm'x, 224 Ky. 211, 5 S. W. (2d) 1064; and it is insisted that none was shown. If all the evidence had shown that the miners merely placed their picks on the forge, or on the ground near the forge, and not elsewhere, or that appellee went into the shop solely for the purpose of getting his boots, then appellant would have owed appellee no duty with respect to the safety of the shop; but, inasmuch as there was evidence that appellee went into the shop for the purpose of leaving his pick to be sharpened the next morning, and further evidence that it was customary for the miners to leave their picks anywhere in the shop, it is at once apparent that it was for the jury to say whether the safe place doctrine applied. Hence appellant was not entitled to a peremptory instruction.

Instruction No. 1 is as follows:

"The court instructs the jury if you believe from the evidence that upon the occasion complained of the defendant failed to exercise ordinary care in keeping its blacksmith shop in a reasonably safe condition by placing carbide in said shop where the gases therefrom would ignite and explode, and if you further believe from the evidence that the defendant while exercising ordinary care for his own

safety, and while leaving his pick in said shop to be sharpened, the gases from said carbide exploded and burned and injured the plaintiff, then you will find for the plaintiff. Unless you so believe you will find for the defendant.''

We think the question whether appellee's injuries were caused by the presence and explosion of the carbide was fairly submitted by the instruction, but the instruction is incorrect in another particular. It overlooks the conflict in the evidence as to the place where the miners were accustomed to leave their picks to be sharpened. Though appellee and his witnesses testified that it was customary for the men to leave their picks anywhere in the shop, appellant's witnesses testified that the custom was confined to the forge and ground near the forge. In instructing the jury on another trial, the court will make the appellee's recovery turn on whether it is customary for the men to leave the picks anywhere in the shop, and whether appellee was in the shop for that purpose. At the same time the court will make it clear by another instruction that, if it was the custom of the men to leave their picks only at the forge, or on the ground near the forge, or that appellee went in the shop for the purpose of getting his boots, he cannot recover.

In view of another trial, it is proper to call attention to an error in the instruction on the measure of damages. In addition to compensation for physical pain and mental anguish and loss of time, it authorized a recovery ''for any permanent injury to his eyes and impairment of his ability to earn money.'' The measure of damages for permanent injury is the permanent impairment of one's ability to earn money, and to allow damages for any permanent injury to one's eyes and impairment of his ability to earn money allows double damages. It is extremely doubtful whether the evidence was sufficient to show that appellee's eyesight was permanently impaired, but, as the evidence may be different on another trial, we refrain from deciding that question.

Among the instructions given by the court is the following:

''5. The court instructs the jury that unless they believe from the evidence the defendant had a reasonable opportunity after the containers mentioned by the witness were placed in the shop to

ascertain whether or not any gas was being generated by them, then and in that event the jury will find for the defendant.''

In view of another trial, we deem it proper to add that this instruction should not have been given. Because of its explosive character, carbide is a dangerous substance, and those who handle it should anticipate that, when exposed to the elements, it will generate gas, and cannot escape liability to others to whom they owe a duty on the ground that they did not have an opportunity after such explosure to ascertain whether or not gas was being generated. That being true, appellant was liable, if, in the circumstances, it knew or by the exercise of ordinary care could have known, of the exposed presence of the carbide cans, provided, of course, the cans were put at a place where the presence of the miners should have been anticipated for the purpose of having their picks sharpened.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.