## Illinois Central Railroad Co. v. Frick.

(Decided Nov. 13, 1934.)

WHEELER, WHEELER & SHELBOURNE for appellant.

CROSSLAND & CROSSLAND for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellee, Allison Frick, brought this suit in the McCracken circuit court against the Illinois Central Railroad Company to recover of it for the loss of his eye. The trial resulted in a judgment for appellee in the sum of $2,000. Hence this appeal.

Appellee, as plaintiff below, alleged in his petition that on the 24th day of December, 1932, about 8 o'clock p. m., he was attempting to cross the railroad tracks at a public crossing on Circle street and Lincoln avenue in Paducah, Ky., where the railroad crossed the street at grade, and while he was waiting there he was struck by a lump of coal which fell from one of the cars of the train of defendant while passing over the crossing. He alleged that the car was negligently loaded and negligently handled by the defendant, causing the lump of coal to fall from the car and strike him in the eye resulting in the permanent loss and use of his eye. The defendant's answer constituted a denial that the plain-

tiff was injured at the time or place stated in his petition or that he was injured by a lump of coal falling from the defendant's train, and denied all allegations of negligence and pleaded contributory negligence on part of plaintiff.

Grounds urged for reversal on this appeal are: (1) The refusal of the court to give a peremptory instruction offered by defendant; (2) the instructions given by the court are erroneous; (3) the verdict of the jury is flagrantly against the evidence; (4) the verdict of the jury is contrary to law and contrary to the instruction; and (5) the court should have given a new trial on account of newly discovered evidence.

At the time of the trial the plaintiff was confined in a hospital on account of an automobile accident and he was not present at the trial to testify before the jury. But previous to the trial and while he was in the hospital, the defendant took his depositions which were read to the jury in behalf of the plaintiff. He testified in his depositions that at the time of the accident he and his brother, Joe Frick, approached the crossing at about the same time of the approach of the train, but that the engine entered the crossing just a little ahead of them; that it was a double-track crossing and one track between them and the train. He testified that while standing there a few feet from the train, something fell from the train and struck him in the eye and then fell to the ground, which he picked up and found it to be a lump of coal and showed it to his brother. He stated, however, that he did not see the lump of coal falling from the train and did not know what struck him until he picked it up. He did not realize at the time that he was seriously hurt and went to the home of his sister, ate supper, and went to bed. Joe Frick testified that while he and the plaintiff were standing near the crossing waiting for the train to pass, all at once he (meaning plaintiff) grabbed his eye and said that something hit him in the eye, and about that time Remus Tucker drove up in a car and got out, and he (plaintiff) was holding his eye and said that it hurt him, and he took his handkerchief and wiped his eye and there was a piece of coal in it. He said that he did not see any coal fall from the train but he heard something fall. He said that the train was running at about 25 or 30 miles an hour, and at about the time his brother was struck and at the time he heard something falling from the train, the cars

bumped together—gave a jar, like they shut off the air. He said that his brother or Remus Tucker picked up the lump of coal, but he did not remember which one picked it up. Plaintiff admitted that he made no report of his injury to the defendant and made no demands for settlement or otherwise until he filed his suit on the 28th day of July, 1933, which was more than seven months after his injury. On the next day after the accident, plaintiff consulted Dr. Bradley. Dr. Bradley testified that he made an examination of plaintiff's eye and found that he had a slight bruise about his eye and he sent him to an eye specialist. He said that the injury appeared to have been caused by some external violence, and could have been done by a lump of coal. Dr. L. P. Molloy, an eye specialist, who examined plaintiff's eye the day before the trial, testified as follows:

"Q. Has he any injury to his eye? A. Yes sir he has an injury to his eye.

"Q. Tell the jury what that injury is? A. He has evidence of an injury, he has what we term a traumatic cataract which destroyed the vision of his eye. It looks like an injured eye, the iris is torn and the lense is dislocated; what we term the anterior lense, that means the lense is right up against the cornea when it should not be there and it is completely opaque.

"Q. You say that is a traumatic condition. What does that mean? A. It is due to an injury.

"Q. Violence? A. I don't know that it necessarily means violence, it was injured by being struck or torn or injured.

"Q. The condition of the eye as it is today was produced by an injury? A. It looks that way.

"Q. You say the sight of that eye is destroyed? A. Yes, sir. * * *

"Q. Did he tell you how he received that injury? A. I never went into the history of his case.

"Q. State whether or not that injury could have been produced by a lump of coal hitting him in the eye? A. It could have been produced by a lick from anything. I have known of such cases caused by being struck by a nail or a splinter."

It is insisted for appellant that the evidence was insufficient to take the case to the jury and its motion for a peremptory instruction should have been sustained.

None of the witnesses testified that they actually saw the coal falling from the train. It was dark and, of course, difficult for the witnesses to have seen the coal coming or falling from the train. However, it is shown by undisputed testimony that while plaintiff was standing within a few feet of the train he was struck by some object which he picked up after it fell to the ground and found it to be a lump of coal and, at the time this happened, the train "lurched or jarred," which of course was calculated to cause coal or other contents of the train to escape therefrom unless very securely loaded or placed in the car in a manner to prevent its escape. The doctors testified that the injury indicated that it had been produced by some external violence. It is argued that some one about the yards could have thrown the lump of coal and struck plaintiff. That is true. There are many *possible* theories, but there is no hypothesis shown other than the coal fell from the train. While negligence will not be presumed, but must be proved as any other fact, yet it may be proved by circumstantial evidence or by showing facts from which negligence will be inferable, and all facts and circumstances must be considered. I. C. Ry. Co. v. Cash's Adm'x, 221 Ky. 655, 299 S. W. 590; So. Ry. Co. in Ky. v. Caplinger's Adm'r, 151 Ky. 749, 152 S. W. 947, 49 L. R. A. (N. S.) 660. Negligence may be inferred from circumstantial evidence of an accident, which, in the usual and ordinary course of things, would not have happened with proper care, and in such cases the burden is cast on the defendant to explain the accident or to show freedom from negligence. C. & O. Ry. Co. v. Rowland, 185 Ky. 278, 214 S. W. 910; L. & N. R. R. Co. v. Reynolds, 71 S. W. 516, 24 Ky. Law Rep. 1402; Ligon's Adm'r v. Evansville Rys. Co., 165 Ky. 202, 176 S. W. 968; Louisville Lighting Co. v. Owens, 105 S. W. 435, 32 Ky. Law Rep. 283.

In C. & O. Ry. Co. v. Rowland, supra, this court held that an injury to one near tracks by falling coal cast the burden on the railroad company to show freedom from negligence. In that case there was no dispute about the coal falling from the train, while in the case at bar it is not shown by any eyewitness that the lump of coal or other object which struck plaintiff, if he was so struck, actually came from the train; yet under the circumstances, as the evidence discloses, our view is that it was a question for the jury to determine from all the

proven facts and attendant circumstances whether or not the coal came from the train. Perry's Adm'x v. Inter-Southern Life Ins. Co., 248 Ky. 491, 58 S. W. (2d) 906. The court did not err in overruling defendant's motion for peremptory instruction. But as the case will have to be reversed for other reasons, we do not express an opinion as to whether or not the verdict is flagrantly against the evidence.

The next complaint is directed to the instruction. We find the instructions to be substantially correct under the issues presented, except instruction No. 4, relating to the measure of damages. This instruction reads:

> "If you find for the plaintiff, you will find for him such sum in damages as you may believe will reasonably compensate him for physical pain and mental anguish occasioned by reason of the accident complained of, if any, *and for any permanent injury occasioned by reason of said accident, if any,* but in all not exceeding $3000 the amount claimed in the petition." (Italics ours.)

The objection to this instruction is that it failed to limit plaintiff's damages for permanent injury to his ability to earn money, as may have resulted directly from his injuries. In plaintiff's petition he did not ask damages for loss of time or other items of damage except for physical pain, mental anguish, and loss of the sight of his eye. By the language of the instruction given, the measure of damages for the loss of plaintiff's eye was not fixed or circumscribed by any basis, but left to the jury to speculate as to what sum would compensate him for the loss of his eye. It is the well-settled rule that the measure of damages for personal injury is for physical and mental suffering (and loss of time if asked) and impairment of earning ability. Taylor Coal Co. v. Miller, 168 Ky. 719, 182 S. W. 920; Iseman v. Hayes, 242 Ky. 302, 46 S. W. (2d) 110, 85 A. L. R. 996; W. A. Wickliffe Coal Co. v. Ryan, 241 Ky. 537, 44 S. W. (2d) 525; Consolidated Coach Co. v. Wright, 231 Ky. 713, 22 S. W. (2d) 108; Porter v. Music, 252 Ky. 582, 67 S. W. (2d) 958, 959. The Porter Case, supra, was quoted from with approval in Consolidated Coach Co. v. Wright, supra, where it was said:

> "And as indicated in the latter case, 'permanent injury' is not synonymous with or equivalent to 'permanent impairment of earning power.' Where

pleading and proof authorize an instruction on measure of damage for permanent injuries, the instruction fixing the measure of damage should conform to the rule announced in the authorities cited." (Impairment of earning ability.)

We conclude, therefore, that instruction No. 4 is erroneous.

It is next insisted that the court erred in failing to sustain defendant's motion for a new trial on the ground of newly discovered evidence.

After the motion and grounds for a new trial were filed and while same were pending, attorneys for the defendant company filed additional grounds for a new trial together with their affidavits in support of same, stating that they had learned after the trial of the case that the plaintiff and his brother, Joe Frick, had stated to Cal Dupree and E. H. Herndon, some time after Christmas, 1932, that the plaintiff was drunk and fell against a car in attempting to go between some cars out on the Pool road, and injured his eye. Later they filed the affidavits of Lou Goad, Henry Houser, and Mrs. Henry Houser, corroborating the statements that Dupree and Herndon had made. All of these witnesses stated that Frick had told them that he was injured by falling against a car that he was attempting to crawl under or go around and that he was drunk at the time. Counsel for plaintiff filed a number of affidavits of citizens of the community impeaching Cal Dupree for truth and veracity, but no affidavtis were filed questioning or impeaching the reputation of the other four affiants.

It is argued for plaintiff that the evidence indicated by these affidavits is merely cumulative and that the court will not grant a new trial on the ground of newly discovered evidence when such evidence is cumulative only. We must concede that this is the general rule. But it is the well-settled rule that statements made by the adverse party which were not in evidence on the trial are not cumulative. The case of Adams Oil Co. v. Stout, 41 S. W. 563, 564, 19 Ky. Law Rep. 758, is very much in point with the case at bar with respect to the rights of a party to a new trial on ground of newly discovered evidence. In that case J. V. D. Coon, C. E. Andrews, and J. P. Ramsey were engaged in business as the Adams Oil Company. Appellee, Stout, sued the company for services rendered to the company through

employment of Wood, an agent of the partnership. The case was defended on the ground that Wood was not the agent of the company. Appellant filed a motion for a new trial, one ground of which was newly discovered evidence. The newly discovered evidence was disclosed by the evidence of John B. Graham and Mrs. Pedigo. The substance of the affidavits of the newly discovered witnesses was that they heard Wood say that he had leased the Adams Oil Wells and was operating them under a lease; that he was individually liable for the work done by Stout; that Wood was not the agent of the company; that Wood was operating the oil wells at his own expense.

Mrs. Pedigo stated that she heard Stout say Wood was running the oil well under a lease and not as agent of the Adams Company. The court, quoting from the opinion of Bramel v. Clark, 6 Ky. Law Rep. 220, 12 Ky. Opin. 705, said:

"And where the newly-discovered evidence refers solely to statements made by the adverse party which were not in evidence on the trial, *it is not cumulative;* and, as it would necessarily have a preponderating influence on another trial, a new trial should be granted the applicant upon his showing that he used due diligence." (Our italics.)

This court reversed the judgment of the lower court in the case of Adams Oil Company v. Stout, supra, because of the failure of the court to give a new trial on account of the newly discovered evidence; the court stated (page 564 of 41 S. W., 19 Ky. Law Rep. 758):

"This evidence is not merely cumulative in its character, *as it refers wholly to statements made by appellee,* and, if the jury had given credit to the witnesses' testimony, it would undoubtedly have had a controlling influence upon their verdict. We think the court erred in not granting the appellants a new trial, in order to give them an opportunity to have the benefit of this testimony. For the reasons indicated, the cause is reversed, and remanded for proceedings consistent herewith." (Our italics.)

The Adams Oil Co. Case, supra, has been referred to and approved in the following cases: Johnson v. Commonwealth, 188 Ky. 301, 222 S. W. 106; I. C. R. R. Co. v. Wilson, 103 S. W. 364, 31 Ky. Law Rep. 789; Ber-

berich v. Lou. Bridge Co., 46 S. W. 691, 20 Ky. Law Rep. 467; Lambert v. Hicks, 15 Ky. Law Rep. 240; Torain v. Terrell, 122 Ky. 745, 93 S. W. 10, 29 Ky. Law Rep. 306; C., N. O. & T. P. Ry. Co. v. Cecil, 164 Ky. 377, 175 S. W. 654.

Counsel for defendant company stated in their affidavits that they used all due diligence in the preparation and defense of their client at the trial, and that they had no information or knowledge that plaintiff had made the alleged statements until after the trial. There were no affidavits or other evidence indicating that counsel for defendant had any such information before the trial. In these circumstances it will not be presumed that they should have made inquiry in the community as to whether plaintiff had made such statements unless they had such information or other circumstances sufficient to put them on guard, and therefore it cannot be said that they could have discovered same by ordinary diligence.

In view of the fact that the evidence respecting the cause of plaintiff's injury is circumstantial only and the further fact that he made no report or claim against the defendant and did not file suit for seven months after his injury, it is probable that the evidence of the newly discovered witnesses tending to show that plaintiff's injury was caused in a way other than claimed by him as against defendant would have changed the results of the trial.

The facts disclosed by this record, viewed in the light of the authorities herein cited, impel us to the conclusion that the defendant is entitled to a new trial and the trial court erred in not sustaining its motion therefor.

The judgment is reversed and remanded for proceedings consistent herewith.