# Koenig Bros. v. Zibart.
(Decided April 24, 1934.)

EUGENE R. ATTKISSON, for appellant.
BENJAMIN F. GARDNER, for appellee.

44

Opinion of the Court by Judge Ratliff—Affirming.

G. Zibart brought this suit in the Jefferson circuit court against Peter Koenig, Frank Koenig, J. B. Montgomery, partners, trading and doing business as Koenig Bros., to recover of them for damages to his residence caused by a gas explosion.

The petition alleges, in substance, that in the month of April, 1928, appellee, plaintiff below, erected a cottage dwelling on his lot in Louisville, Ky., and contracted with appellants, defendants below, to install the plumbing in the building including the gas pipes and fixtures; that his house was completed on or about the 2d day of May and he and his family moved into it; that the inflow and supply of gas was insufficient for the purpose of cooking, and he called upon the defendants to repair or remedy the trouble, and on May 18, 1928, the defendant Peter Koenig came to his house and made an examination in an effort to locate the defect in the gas fixtures; that Koenig removed the gas meter and tested the gas stove and pipes with matches and found that there was no gas present; that Koenig replaced the meter and promised to come back the following day, and on May 19 he came back and removed the gas meter in the basement and then went outside the building and did some repairs on the intake pipe and allowed the gas to leak into the cellar without replacing the meter or stopping the opening of the pipe caused by the removal of the gas meter; that after considerable delay a hole or opening in the gas pipe on the outside of the building was found, and Koenig closed the opening by soldering same, and then returned to the basement and carelessly and negligently struck a match to make further inspection of the pipe, whereupon there occurred a powerful explosion of gas, which in the meantime had flowed through the opening of the pipe and accumulated in the basement as a result of his failure to stop the opening of the pipe or to replace the meter while he was making his examination and repairs to the pipe on the outside; that as a result of the explosion his dwelling house was shook from its foundation and the walls, ceiling, roof, chimney, and the whole house was damaged to such an extent that it was rendered uninhabitable, and plaintiff was required to remove himself and family therefrom.

He further alleged that thereafter the defendants

promised and agreed with him to reconstruct and repair the damages and injuries to his dwelling as a result of the explosion, but after waiting a reasonable time for defendants to begin the work of reconstruction and repair, he made demand of them to perform said work, whereupon they refused to do so, and plaintiff was forced to repair his building himself at a cost of $1,100, which was the reasonable cost of the reconstruction and repairs made necessary because of the explosion.

He asks to recover the further sum of $420 for the loss of the use of the dwelling between the time of the damage thereto and the time it was repaired.

The concluding grammatical paragraph of the petition is as follows:

"Plaintiff states that by reason and because of the breach of the contract upon the part of defendants as herein set forth, and the negligence and carelessness of the defendants, their agents and employees as herein set forth, he was and has been damaged in the sum of $1520.00, for which amount, including interest on the sum of $420.00 for fourteen months at six per cent per annum up to the 2nd day of July, 1929, and also interest on $1520.00 at the rate of six per cent per annum from and after said date."

Defendants entered motion to require plaintiff to elect whether he will maintain his action as one for breach of contract or for tort, which motion was sustained by the court and plaintiff elected to prosecute his action for breach of contract, and the court on its own motion struck from the last paragraph of the petition relating to the breach of contract, the following words:

"* * * and the negligence and carelessness of the defendants, their agents and employees as herein set forth * * *"

Plaintiff's petition stated a cause of action on both negligence and breach of contract. It was unnecessary perhaps for plaintiff to have set out in his petition in detail the acts of negligence as he did. It would have been sufficient had he merely set out the facts that the explosion occurred and that a bona fide controversy or dispute arose between himself and defendant as to the cause of the explosion and whether defendants were re-

sponsible therefor and in compromise and settlement of the dispute defendants promised and agreed to repair his house, and thereafter breached the contract. But after he elected to try on breach of contract and the court struck from that portion of the petition the above-quoted allegations of negligence, the action was for breach of contract and the allegations of negligence were not prejudicial or harmful, though unnecessary. Barr v. Gilmour, 204 Ky. 582, 265 S. W. 6; Forsythe v. Rexroat, 234 Ky. 173, 27 S. W. (2d) 695. .

Defendants filed their answer traversing the allegations of the petition and later by amended answer pleaded that the explosion was caused by lightning, alleging that there was an electric storm on at the time of the explosion and lightning struck the house resulting in an ignition of the gas in the basement. Later by a second amended answer they pleaded contributory negligence on part of plaintiff, alleging that plaintiff negligently permitted gas to escape and accumulate in the basement of his dwelling and that the gas which caused the explosion was in the basement before and at the time defendant Peter Koenig entered the basement for the purpose of making the examination, and plaintiff negligently failed to inform the defendant of the presence of the gas.

The issues were made and the case tried to a jury and resulted in verdict and judgment in favor of plaintiff in the sum of $1,100. A motion and grounds for a new trial were duly made and overruled. From that judgment this appeal is prosecuted.

Evidence was taken by the respective parties respecting the alleged negligence of the defendants, the cause of the explosion, and the alleged agreement or promise of defendants to repair the house. The plaintiff testified that immediately before Koenig went into the basement he called for matches, which were furnished him, and soon after he went into the basement the explosion occurred. Plaintiff was corroborated by his thirteen year old son, who testified that he delivered the matches to Koenig at his request immediately before he went into the basement. No one testified that they saw Koenig strike a match. The above circumstances are the only evidence as to whether or not he did light a match. Koenig denies calling for matches or that he had any matches and denies that he lighted a match at all at that time. He stated that the odor of

gas was present when he entered the basement and he opened a basement window to let the gas escape and then started back up the basement steps and when about halfway up the steps the explosion occurred. He says he did not know whether he was blown out of the basement or whether he walked out. The evidence shows that Koenig was badly burned and injured as a result of the explosion.

Respecting the claim that the explosion was caused by lightning, the evidence is somewhat conflicting. There is some evidence to the effect that it was raining, and perhaps an electric storm some time in the afternoon of that day; but the preponderance of the evidence is to the effect that it was not raining nor any lightning at the time of the explosion.

Respecting the promise of defendants to repair the house, the plaintiff testified that after the explosion, defendant was standing around in the yard and he (plaintiff) suggested that he had better go home because of his injuries, and defendant stood around a little while and looked around in the yard and said: "Well, how did this happen?" And after they took him to his truck which was parked in the alley, defendant sat down in the truck and put his hand on plaintiff's shoulder and said: "Mr. Zibart, don't worry, I am going to repair your house; if I die, my brother will." He further stated that on the same evening of May 19th, the other defendants, Frank Koenig and Mr. Montgomery, came over to his house between 6 and 7 o'clock, and while sitting on the back porch together with Ed Osterman and a man named Koscuba, Frank Koenig said to plaintiff: "Mr. Zibart, I am going to repair your house just as soon as my brother gets well, give us a little time." And Mr. Montgomery said: "Same is here." He further stated that about five weeks later, he called Frank Koenig on the 'phone and asked him if his brother had gotten well and asked him what he meant to do now, and Koenig said that they would not do anything because they thought the lightning struck the house; and further said: "You started in with a lawyer, now finish it with a lawyer."

Plaintiff denied that there was any gas in the house before he called the defendant and said that there was water in the pipe that had shut the gas off and he was

not getting any gas at all, and that was the reason he called the plumber.

Ed Osterman testified that he was at the house of plaintiff in the late afternoon of the same day the explosion occurred and heard the defendants Frank Koenig and Montgomery and plaintiff talking about the explosion and damage to the house, and that he heard both the defendants tell the plaintiff that they would repair his house. John Koscuba, testifying with respect to the alleged conversation between plaintiff and the defendants Frank Koenig and Montgomery, at the time and place the plaintiff testified that the above-named defendants promised to repair the house, stated that he did not hear any conversation between plaintiff and defendants and that he did not remember seeing Montgomery there, but he saw Frank Koenig and talked to him and Koenig said in substance, that he did not know whose fault it was (referring to the explosion), but that if it was their fault they would repair the house. This conversation was between the witness and Frank Koenig, but it is not shown whether or not the conversation was in the presence of the plaintiff.

Other witnesses testified that they heard conversation between the plaintiff and Peter Koenig just after the explosion and that Koenig said to the plaintiff that he would "see him through." There is no explanation as to what was meant by the expression "see him through," but it is insisted that this expression was used to convey the idea that he would repair the house or that he would see that plaintiff was taken care of. However, this was a question for the jury and it had the right to draw its own conclusions and inferences from the language used.

The defendants denied that they or either of them promised plaintiff to repair the house, but did say that if upon an investigation they were convinced that the explosion was caused by the negligence or any fault on part of Peter Koenig, they would repair the house.

The action being one for breach of contract, it was not necessary for plaintiff to prove actual negligence on part of defendants. It was necessary only that plaintiff show reason or grounds for a bona fide dispute or controversy and that defendants promised to settle the dispute, i. e., that they would repair the house. Forsythe v. Rexroat, and Barr v. Gilmour, supra.

It is our conclusion that the evidence was amply sufficient to show that there was a bona fide dispute between the parties respecting the cause of the explosion. With respect to the issue as to whether or not defendants promised to repair the house, the evidence is, indeed, very conflicting; but on the whole we are unable to say that it was not sufficient to constitute an issue for the jury or to support the verdict. The rule that this court will not disturb the fact finding of a jury unless there be no evidence of a probative or substantial nature, or that the verdict is palpably and flagrantly against the great weight and preponderance of the evidence, is too well known to the legal profession to require citation of authority.

The next complaint is directed to the instructions. Instruction No. 1 is as follows:

"1.   It was the duty of the defendant, Peter Koenig, as a member of the partnership of Koenig Bros., in locating the defect in the gas plumbing of the house of the plaintiff, G. Zibart, to exercise ordinary care to prevent the accumulation of gas in the basement of plaintiff's house; and if you believe from the evidence that Peter Koenig, was negligent, in that he failed in this duty, and by reason of such negligence, if any there was upon his part, gas was permitted to accumulate in the basement of plaintiff's house, and further believe from the evidence that after said gas was permitted to accumulate in the basement of plaintiff's house, the defendant, Peter Koenig, negligently lighted a match in said basement and an explosion thereby occurred, damaging plaintiff's property, and if you further believe from the evidence that thereafter, the defendants, or any of them, promised the plaintiff, G. Zibart, to restore said house to the condition in which it was prior to said explosion, then the law is for the plaintiff, G. Zibart, and you will so find."

Instruction No. 2 in substance tells the jury that although they may believe that defendants were negligent as set out in the instruction No. 1, in permitting gas to accumulate in the basement, and that the house was struck by lightning resulting in the gas explosion, they will find for the plaintiff. This instruction obviously was based on the theory that even though the house was struck by lightning, which ignited the gas,

yet the explosion would not nave occurred but for the accumulation of gas in the basement. But this instruction, like.instruction No. 1, further required the jury to believe from the evidence that defendants *promised plaintiff to repair the house.* Instruction No. 3 authorized the jury to find for the defendants in the event they should believe that the defendants were not negligent in causing the gas to accumulate in the basement and that the explosion was caused by lightning independent of any negligent act of defendant. This instruction was more favorable to defendants than they were entitled, and the error was in their favor because it failed to submit to the jury the issue whether or not defendants promised to repair the house, which was the basis of the right of recovery. Instruction No. 4 is as follows:

> "Even though you may believe from the evidence that the defendant, Peter Koenig, was negligent, as set out in Instruction No. 1, yet if you further believe from the evidence that the defendants or any of them, did not promise after said explosion to restore said house to the condition in which it was before said explosion occurred, then the law is for the defendants, and you will so find."

Thus, it will be seen that the instructions are subject to the same criticism as the evidence. As above stated, it was not necessary that plaintiff prove negligence, and, consequently, it was unnecessary to instruct the jury on that subject. But in our view the error is nonprejudicial and, in fact, the instructions are more favorable to the defendants because the jury was required to find that defendants were guilty of negligence, which was unnecessary. Instructions Nos. 1 and 2, which submitted the question of negligence to the jury, further required the jury to find that, in addition to negligence, they must believe from the evidence that after the explosion the defendants or either of them promised to repair the house. Under instruction No. 4 the jury could not have found for plaintiffs in any event unless they believed that defendants promised to repair the house. This instruction covers the gist of the case.

If the instructions had been such that the jury could have found for plaintiff on the grounds of negligence only without finding that defendants promised to repair the house, they would have been prejudicially erroneous. But instructions 1, 2, and 4 all positively required the

jury to find that defendants did promise to repair the house, otherwise it could not find for plaintiff. This was all that was necessary. The fact that the instructions required the jury to find more than was necessary, although technically erroneous, could not have prejudiced the substantial rights of defendants.

It is a well-settled rule that this court will not reverse a judgment because of errors not prejudicial to the substantial rights of the party excepting. Sections 134, 338, and 756, Civil Code of Practice, and cases cited thereunder.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.