## Senters et al. v. Elkhorn & Jellico Coal Co.

Dec. 6, 1940.

R. Monroe Fields, Judge.

668

Hawk & Lewis for appellants.

Stephen Combs, Jr., for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On September 2, 1937, parties above, respectively plaintiffs and defendants below, executed the following writing:

"Whitesburg, Ky. This agreement made and entered into by and between Elkhorn and Jellico Coal Co., and Walter and Richard Senters * * *. Whereby Walter and Richard Senters agree to make opening and grade tram road on the head waters of Dry Fork Creek, for which the * * * company agrees to pay them fifty cents per cubic yard for the dirt and one dollar for the rock. The company to furnish the necessary explosives to do this work."

In February, 1939, appellants filed petition seeking to recover of defendant a balance due for labor performed, and a further sum for alleged breach of contract. They set up the above writing and asserted that prior to its execution company's engineer staked out the openings and two tram lines; made soundings and estimated that it would be necessary to remove (omitting decimals) 4,617 cubic yards of dirt and 768 yards of rock, which, had all been removed, would have entitled them to $3,076.26.

Appellants entered upon and prosecuted the project, until they had removed 2,116 cubic yards of dirt, when, as they allege, the company notified them to cease operations. They professed ability and willingness to have completed the removal of the total estimated quantity of dirt and rock at contract prices.

They claim that while they removed the quantity of dirt mentioned, the company paid them $950 for only 1,900 cubic yards, but refused to pay them for 215.7, or $107.85, and $12 for explosives, paid for by them. They assert that there remained to be removed all rock and 2,500 yards of dirt, for which removal, had they been permitted to carry on, they would have been entitled to $2,018.35, and their net profit would have been $1,211.01. Summing up, appellants sought recovery of the last named amount for damages caused by the alleged breach, and the unpaid $107.85 for dirt removed.

By answer and amended answer, appellees admitted execution of the writing, but contended that it was merely a memorandum by which the parties agreed on unit prices for removal of such dirt and rock as might be removed, and that essential terms and conditions were, by mistake of the draftsman, omitted from the contract. The purpose of the company was to make openings and two tramways at some distance apart, apparently on different sides of the mountain. At the time of the writing the company owned the land upon which one opening and tram grade were to be constructed, but the Kentucky River Coal Corporation owned the land upon which the other construction was proposed.

Further, they say that it was agreed and understood between parties that should the company purchase the other property, then the tram road should be built. If the company failed in purchase, it would not be built.

After the memorandum was signed and work was begun on the proposed construction, the plan to purchase adjacent property failed, and appellants were notified of the fact. Appellants then completed the work on the first project, and were paid in full, but did some work on the other project. The pleadings by appellee were met by replies in the form of denials.

Proof was heard, and a jury found for appellee; judgment was entered dismissing the petition, and mo-

tion for a new trial was overruled. The motion was based on the following grounds, urged here:

(1) The verdict is not sustained by sufficient evidences, and is contrary to law.

(2) The court erred in refusing to instruct the jury on the whole law of the case.

(3) The court erred in admitting incompetent and irrelevant evidence, and in rejecting competent and relevant evidence.

Taking up the third ground, we find that in brief counsel for appellant has not pointed out any particular bit of testimony admitted over his objection, nor any offered in appellant's behalf and rejected. Nevertheless we have gone through the transcript carefully, and find no basis for this ground of complaint. It is true the trial court remarked that the writing was indefinite, except as to unit prices, and permitted the proof to take a wide range, so as to get the entire picture before the jury.

Appellant's contention is that all proof as to the writing being a memorandum, and that the real contract contemplated a possible failure of the company to buy property for the building one, or a part of one tram road, was incompetent. The argument is that it is well settled, "as a general proposition of law, that a written contract cannot be changed or modified by parol testimony when the contract is plain and certain in its terms, that it needs no citation of authority for this court." This is a statemet of a sound principle of law with regard to construction of contracts. But the rule is otherwise when the issue is whether or not, because of mutual mistake, essential terms and conditions were omitted.

Appellant undertakes to blow hot and cold, since he was compelled (and permitted) to introduce proof endeavoring to show what the contract contemplated; his pleading did not pitch his cause solely on the terms of the writing, and his proof went to the extent of undertaking to show that surveys and soundings were made, stakes driven and an agreement as to the general layout of the proposed excavations.

An exhaustion of the resources of the written document does not express the purport of the contract from

the viewpoint of either party. It simply says, if we read it correctly: "Senters agrees to make *opening* and grade *tram road* on the head of Dry Fork Creek, for which company agrees to pay 50 cents per yard for removal of dirt, and $1 per yard for rock," the company to furnish exlposives. The proof evidences a mutual mistake.

The writing did not fix the place, time for beginning the work, nor length, depth or width of the opening or tram bed; no time was fixed for payment, so we have no difficulty in concluding that this was not a complete agreement. Ordinarily parol evidence is not admissible to contradict the terms of a writing, unless the party complaining alleges that the terms of the executed contract are different from the terms of the actual contract intended to be performed, and that the omission was due to fraud on the part of the adversary, by mistake on his part and fraud on the part of the adversary, or by mutual mistake. Barret v. Clarke, 226 Ky. 109, 9 S. W. (2d) 1091, and cases cited. In Bullock v. Young, 252 Ky. 640, 67 S. W. (2d) 941, 946, we wrote what is fittingly applicable here:

> "In ascertaining their intentions, the chief and most satisfactory index is found in the circumstances whether or not the particular element of the alleged extrinsic negotiations is dealt with in the writing. 'If it is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by the most careful judges, and is in contrast with the looser and incorrect inquiry whether the alleged extrinsic negotiation contradicts the terms of the writing.' Wigmore on Evidence, vol. 4, § 2430. * * * If it is incomplete on its face, parol evidence is admissible to aid in establishing their intention [citing cases]."

We are of the opinion that it was proper to introduce evidence, not for the purpose to vary or contradict the writing, for there was neither contradiction nor variance here, but to show what was in the minds of the parties, and what constituted the agreement and its subject matter. This being true, we have little difficulty in con-

cluding that while a decidedly sharp conflict, there was ample competent evidence to take the case to the jury and sustain the verdict.

Father and son, appellants, were positive that nothing was said in conference as to the effect of the failure to procure adjacent land for opening or tram road purposes; this is the gist of the controversy. On the other hand, three wtinesses are equally as positive that this feature was not only thoroughly discussed, but fully understood and agreed, and we find other proof and circumstances which show that appellant knew of the existing situation.

On the matter of instructions, appellant's objection was that the court failed to give the whole law of the case. The record fails to show, and it is not now claimed, that appellant offered any instruction whatever. Neither did appellees offer any; the court on its own motion gave four instructions: One, the usual instruction as to signing by those of a jury who agree, if less than the twelve agree. Another as to the measure of damages, in case the jury should find for plaintiff, which is correct in form and substance, and about which there is no complaint.

The first instruction told the jury that if they should believe that at the time of the writing the parties had in mind the location and extent of the openings and tram road, and that thereby the plaintiffs were being employed unconditionally to do that work, and thereafter defendants refused to allow plaintiffs to complete the work, they should find for plaintiffs.

By instruction 2 the jury was told that if they believed from the evidence that at the time the writing was entered into, it was agreed and understood by the parties that plaintiffs were being employed to do the work upon condition that defendant should thereafter acquire title to the property over which said tram was to be built, the law favored the defendant, and they should so find.

Appellant complains that the court erroneously used, in instruction 1, the words "and that the plaintiffs by said agreement were unconditionally to grade said tram road," since there was nothing in the written contract to base such theory of the case upon. It is true

that the contract did not use the word ''unconditional-ly,'' but by the pleading offered by appellants, their theory and belief was that they had a contract without conditions other than expressed in the writing. The pleading by appellee was that the contract in part was based on one other condition, the ability of the company to purchase necessary land. The court very aptly put the contention of the plaintiffs before the jury.

Even if instruction 1 was incorrect, which is not conceded, instruction 2 very clearly and definitely out-lined the whole issue to the jury, and gave the law of the case under the pleadings and proof. The jury found by its verdict that appellee had failed to obtain the addi-tional land for its purposes. The law is that when the performances of a contract is based upon the continued existence of a given thing, the existence being assumed as a basis of the contract, performance is excused when the existence fails. Beach on Contracts, Section 217; Williston on Contracts, Section 1567. The same rule ap-plies when a contemplated situation fails to materialize. Aronson v. Gibbs-Inman Co., 283 Ky. 107, 140 S. W. (2d) 806.

Here the issue was simple; the evidence was sharp-ly in conflict. But there was substantial evidence of probative nature, sufficient to prevent us from now tak-ing the position that the verdict of the jury was palpa-bly against the evidence. Koenig Bros. v. Zibart, 254 Ky. 43, 70 S. W. (2d) 945; Smith v. Dunning, 275 Ky. 733, 122 S. W. (2d) 781, and numerous cases cited under Key Number System 1002, Kentucky Digest, Appeal and Error.

Judgment affirmed.