## Strong v. City of Harlan.
(Decided Feb. 26, 1937)

R. L. POPE and J. O. BAKER and GEORGE R. POPE for appellant.

FORESTER & CARTER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal requires our review of an action brought by the appellant, Mrs. Polly Strong, as the administratrix of the estate of her deceased son, John Strong, against the appellee, the City of Harlan, for the recovery of damages for his death, alleged to have been caused by its negligence in failing to keep its street where the accident occurred in a safe condition for public traveling.

Appellant's son, John Strong, was killed at about 10 o'clock on the night of July 28, 1935, when traveling towards his home in Harlan over North Main street, when it is claimed that due to the defective and unsafe condition of the street his car was caused to leave it and plunge over an adjoining embankment and thence into a large tree, some 60 feet distant therefrom, resulting in his death.

The appellant, Mrs. Mary Strong, having qualified as his administratrix, brought this action to recover damages for his death, alleging in her petition that her son's death was caused by the city's negligence, to wit, in permitting a break or cave-in of the concrete paving on its North Main street to occur and to remain in a dangerous condition, without making timely or proper repair, for automobile traffic; in failing to properly warn the public of its dangerous condition until repaired and in allowing dirt, refuse, and debris to wash into and remain on the street, making it slippery and unsafe for travel; and that by reason of its said combined acts of negligence, the automobile in which her son was driving upon the occasion in evidence was caused to leave the street, jump over its adjacent embankment, and collide with a tree below.

The defendant city, here appellee, demurred to the petition and, without waiving same, filed answer thereto

traversing its allegations and by a second paragraph affirmatively pleaded contributory negligence of the deceased.

This plea was controverted by a reply, making up the issues. The evidence then offered by the plaintiff and her numerous witnesses, to support her alleged cause of action, is, in substance, that in the fall of 1934, the city had undertaken to widen North Main street, a main thoroughfare of the city, by adding to its west side a concrete slab, some 6 or 8 feet wide and 42 feet long; that this widening of the street was made at a point where it curves in its course and where the waters of the Cumberland river sweep in a current strongly against the street's supporting soil, washing it away, with the result that this added slab of concrete, left without support, caved in in the following February, 1935, producing a hole in the street some 5 or 6 feet deep; that the city was dilatory and negligent in failing to promptly repair this unsafe condition of its street, or ever properly restore it; and that at the time of the accident in evidence, the depression on such west side of the street, so created, was from 4 to 14 inches deep, making that part of the street unsafe for travel; and also that the street's surface was rendered more dangerous by a slippery and slimy accumulation of refuse, dirt, and debris, negligently permitted to be washed onto and remain on the street.

Further, the evidence is that when the deceased was upon this occasion attempting to drive over this defectively made fill of the street's cave-in, the left wheels of his car struck a hole therein, and against the jagged edge of the fill's broken concrete side, which wrenched the car to his left and caused him to lose control of his steering wheel and car; that by reason of such loss of control, the car ran in a vacillating course for about 100 feet along the west curbing, or until it reached a break therein, through which it left the street and plunged over its embankment into a tree, some 60 feet beyond, causing his death.

Appellant both pleads and testifies that the negligence of the city in leaving its street in such an unsafe condition for travel and particularly in its failing to reasonably repair the depression or hole in the street, into which the deceased ran, was the proximate cause of the accident resulting in John Strong's death.

Further, the appellant, when testifying, introduced in evidence a map prepared for her, depicting what she testifies was the wavering, changing course of the car, after striking this hole in the street, for a distance of about 100 feet, where it plunged over the embankment and into a tree, some further 60 feet distant.

The record discloses that there were no eyewitnesses who could testify as to what caused the car, after striking the hole in the street, if it did, to then further advance in a broken, changing course along or near its left curb until it jumped the adjoining embankment. Its course, as depicted by appellant's map, shows that while the car, upon striking the hole, was thereby pulled over to the left curb of the street, it further shows that the car repeatedly turned back into the street, or that its course was first into the curb, then away from it, back into the street, which it repeated again and again, until it finally, when so zigzagging, left the street and went over the embankment.

The inference of appellant, deduced by her from such wavering course of the car after it struck the hole in the street, as depicted by the map and so testified to by her and her witnesses, is that the jerk, resulting from the car's running its left wheels into this hole in the street, caused its driver to lose control of the steering wheel and the direction of the car's course, with the result that it thereafter advanced along the street unguided, or as if without a driver, and plunged finally over the embankment.

The evidence for plaintiff also was that the deceased was an experienced and careful driver and that he had not been drinking before the accident. Therefore, it is contended that the accident must have been caused in the way stated and that had there been any warning given as to the condition of the street at this point or a proper lighting of it by the city, the deceased would have been able to avoid the hole and steer a safe course over it.

Further, the appellant's evidence was that this part of the street, alleged to have been dangerous and unsafe for driving, was intermediate between the deceased's home and his place of employment and that he was, by reason of his required daily traveling, or driving over it in going to and from his home, fully advised

as to what was the then condition of this part of the street at the time of the accident.

At the conclusion of the evidence introduced for plaintiff, defendant moved for a directed verdict, which was refused.

Thereupon, defendant offered its counterproof in support of its denial of negligence in either suffering the caving in of the new addition to the street to occur or in failing to make timely or proper repair thereof and of its denial that the alleged unsafe condition of the street (which it also denied existed at the time of the accident) could have caused the accident. It further averred that even conceding the unsafe condition of the street then existed, there was yet no substantial evidence offered by plaintiff tending to show that such alleged unsafe condition of the street was connected with or the proximate cause of the deceased's car, when traveling over it, leaving the street and going over the embankment.

One witness, Will Henderson, testified that upon the occasion of the accident he was just returning home from church and was walking along the street as the deceased drove his car past him, along this alleged defective part and side of the street; that just after the deceased passed him, his attention was attracted by his hearing the noise made by deceased's car's striking the curbing and going over the embankment, when he looked back, but only in time to see the back of the car as it went over.

Further, the mayor, a number of policemen, the city's street foreman, and other witnesses testified for the defendant that when the sidewalk and the street pavement caved in, the place was immediately fenced and roped off and red lanterns and danger signs kept at both ends of the break until the city had filled and repaired it, when the fence, ropes, and lanterns were removed, but the danger signals kept up, and that electric lights on light poles, both north and south of the break, were maintained.

Several policemen and the mayor were all on the scene of the accident, they testify, that night, shortly after it occurred and that there was then no rubbish or rock on the street at that place, nor any chuck hole in the break; also, that a large number of cars were using

this street and passed this place that night safely, both before and after the accident.

Further, defense witness Henderson, and the only one who saw any part of the accident, was unable to and utterly failed to explain why the car went over the sidewalk and bank, but his evidence is to the effect that the alleged break in the pavement, so far as he saw or knew the attending circumstances, had nothing to do with causing the accident, for the reason, he testified, that Howard Ayres' car was at that time headed in the direction from which Strong was approaching and was on the west or alleged dangerous side of the street as he here passed Strong, who then, in order to pass Ayres' car, had to travel on the east or right side of the street, which it was not alleged was then broken or in bad condition.

The plaintiff introduced Howard Ayres as her witness in rebuttal at the close of defendant's evidence. On cross-examination, he testified that the deceased Strong passed him on the right or solid concrete side of the pavement 25 or 50 feet below the break, when he, the witness, was driving at a rate of 15 to 20 miles' an hour on the west side of the street, which it is alleged was in an unsafe condition.

Upon the conclusion of defendant's evidence, the court and jury upon its motion visited and inspected this portion of the street where the accident was admitted to have occurred. Upon returning, defendant renewed its motion for a peremptory instruction, which the court gave the jury, directing it to find for the defendant. The jury then returned its verdict, pursuant to the instruction given, when judgment was entered thereon and plaintiff's petition dismissed.

From this judgment an appeal is prosecuted, in which it is urged and argued as its first and chief ground for reversal that the court erred in withdrawing the case from the consideration of the jury "by granting the defendant's motion for a peremptory instruction."

Counsel for appellant strongly argues that by the map prepared by her, the "green line on the map represents the path of Strong's automobile that night, showing how it ran into the hole and then traveled its irregular course until it struck the curb line where it

jumped the side walk and shot down against the poplar tree on the river bank.''

Further, appellant argues that the uncontradicted evidence of some eight witnesses shows that the left wheel of the deceased car ran into this hole, causing the car to travel in a zigzag course, with unbroken continuity from the hole clear to the poplar tree, where the car was found, turned squarely about, with Strong dead in it; that the continuous, unbroken marking of this car's wheels on the surface of the road, from this hole on to the tree where Strong was found dead, speaks louder than "the warped evidence of human beings''; and "the thing itself talks negligence.''

While several of the appellant's witnesses testify that they visited the scene of the accident within a few minutes after its occurrence and that they could and did trace the track of deceased's car from the tree it finally struck, up the bank, to the sidewalk over the curbing, along the curbing, which it here and there touched, and on down to the hole in the street, into which the car ran, as the beginning point of its rough, bumping, and zigzagging course to the tree, it is difficult to perceive how the circumstantial evidence only here before us can be accepted as tending definitely or substantially to show that appellant's striking the hole in the street was the reasonably established or certain cause of his car leaving the street and going over the embankment 100 feet distant therefrom, especially where our examination of appellant's map, purporting to show the zigzag course of this car after passing this hole into which it is alleged it ran, as well as her evidence, does not show that his car was thereby caused to skid or go over the bank where he first struck the curbing, but that, after so striking it, the car, in traveling some hundred feet, was twice turned into the curb, and out into the street and then the third time into the curb and over the embankment.

In such respect, the facts found in the instant case are very analogous with those found in the recent case of City of Ashland v. Burley, 265 Ky. 176, 96 S. W. (2d) 581, 583, where, in an action brought for the death of a taxicab driver, drowned when his taxicab ran off the street into a creek, the evidence as to the city's negligence in allowing a pool of water to remain in the highway, from which an icy condition resulted on a dis-

tant part thereof and which it was alleged caused the driver's taxicab to there skid off the highway, was held insufficient for the jury, upon the ground that the rights of parties litigant cannot be determined on inferences drawn from other inferences.

From the evidence there had, it appeared that one of the city's streets had been so constructed as to create a slight basin in its surface, where a shallow pool of water, some 20 feet long and extending from its north curb to about the center of the driveway, accumulated. After alleging such fact, the petition averred that on the night of March 9, 1934, vehicles passing through that shallow pool carried and distributed water with their wheels for a distance of two hundred or more feet west of the pool where it was deposited on the surface of the highway, later freezing and making the highway slippery; that decedent's taxicab, while he was driving it alone at a late hour of the night of his accident, was caused to slip on the frozen water thus transported and to mount the curbing, cross the adjacent sidewalk and run into a creek, where decedent was drowned and which, according to the petition, was the proximate result of the alleged negligence of the defendant in permitting the accumulation of the slight, distant pool of water upon its street.

The court, in here discussing the evidence as well as the lack of evidence, said:

The evidence established the car's track "ran in a comparatively straight direction from the point where it left the highway at about an angle of 45 degrees therefrom as far as it could be traced across the berm to the stream of water below," and the court, in considering the sufficiency of this evidence to show actionable negligence on the part of the defendant city, said:

"Even if the city could be held liable for the accumulation of water in the shallow pool referred to, it is by no means established by evidence of sufficient probative quality that such alleged negligent act caused the icy condition at the far removed point where decedent's automobile left the highway. Without further discussion or elaboration, it is our conclusion that there was a failure to prove the necessary negligence on the part of defendant to establish the right of action relied on. * * *

"No convincing physical evidence appeared at

or about the point where decedent's automobile left the highway to indicate that its leaving was due to any surface conditions of the highway. * * *

"In the Siemer Case [180 Ky. 111, 201 S. W. 469], after referring to numerous prior ones, we expressed our conclusions in this language: 'Authorities might be multiplied even to an undue extension of this opinion in support of the proposition to the effect that testimony, in order to have probative force, must be such as to have a legal and logical tendency to establish the principal fact in issue. The rights of parties litigant may not be determined and adjusted upon mere inferences drawn from others.' * * *

"Still another principle of law bars plaintiff's right of recovery, * * * and it is, that the manner in which the fatal accident occurred rests in pure surmise and speculation. When that condition is produced by the evidence, recovery should not be permitted, although there might be evidence supporting not only the charge of negligence of defendant, but that it may have proximately contributed to the complained of result. * * *

"In stating the sum and substance of that principle, we said in the Conley opinion [261 Ky. 669, 88 S. W. (2d) 683] that, 'The holding of those cases [cited therein], in substance, is, that although defendant may have been guilty of some act of negligence, yet it was incumbent upon plaintiff to prove in some substantial form that such negligence was the proximate cause of the injury, since it is not enough to manifest only a bare speculation that it might have been the cause.' "

These rules and legal principles announced in the Burley Case seem peculiarly applicable here in considering appellant's contention that the court erred in refusing to submit to the jury's consideration the question of the city's liability for its alleged negligence in permitting a hole to come in the street, when the evidence did not logically tend to establish that such negligence, if it existed, was the proximate cause of the decedent's death.

While circumstantial evidence, resting on physical facts, may be sufficient to establish a case where the de-

fendant's negligence has operated as the proximate cause of the injury for which the defendant is sued, we do not find that such was the probative character of the circumstantial evidence here relied on to establish that defendant's alleged negligence, if any, was so connected with the deceased's injury and death as to be its proximate cause.

While appellant contends that the circumstantial evidence here introduced "itself speaks negligence," we are unable to so view it. This evidence, as above summarized, only tends to show that after the car struck the hole in the street, it continued in a zigzagging, broken course, leading both to and from the curbing of the street, up to the distant point some 100 feet away, where it there left the street and plunged over its embankment.

In the absence of any evidence as to what caused the car to there take this errant course, after wobbling to and fro along the west side of the street up to that point where it plunged over the embankment, it could be conjectured that it was caused by any number of things, a blow-out of a tire, the intoxication or sudden death of its driver, ending his control of its course, or the breaking of the steering gear, rendering him unable to properly drive it.

Appellant's evidence and the map submitted by her, showing the wavering track of the car alleged traced from the tree, where its course ended, back into the road and down to the hole therein, into which it is alleged the decedent drove his car, we find altogether insufficient and lacking in probative value to show the cause of the car's here taking such an errant course or, that is to say, it did not reasonably tend to establish that its running into the hole in the street was the certain or proximate cause of its later leaving the street at a point some 100 feet distant therefrom. To submit the case upon such character of evidence, we are of the opinion, would clearly come within the inhibited bane of permitting the jury to impose liability upon the defendant upon its mere conjecture and supposition that the city's negligence was the proximate cause of plaintiff's injury sued for.

As said in the case of Wigginton's Adm'r v. Louisville Railway Co., 256 Ky. 287, 75 S. W. (2d) 1046, 1050, "evidence merely furnishing the basis of conjecture,

surmise, or speculation does not establish proximate cause, with certitude, sufficient upon which to rest a verdict of a jury.''

Further, it was there, as it may be here, said:

"It was the duty of Wigginton's estate to establish by competent evidence, not that the dangerous or defective condition of the street might have caused Wigginton's injuries, but to establish that the same was the proximate cause thereof, as the phrase proximate cause is generally defined,'' which is, ''that the cause of an injury, which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury, and without which the injury would not have occurred, or it is that act or omission which immediately causes or fails to prevent the injury.''

Stacy v. Williams, 253 Ky. 353, 69 S. W. (2d) 697, 705.

Even conceding that the hole in the street, into which the deceased is said to have run his car, existed by reason of the defendant's negligence in not properly filling or repairing the hole, yet it was not actionable negligence, entitling the estate of deceased to recover damages for his death, unless it was also the proximate cause thereof, which clearly was not shown, we are of the opinion, by the character of circumstantial evidence introduced in support of such contention.

While, as further said in City of Ludlow v. Albers, 253 Ky. 525, 69 S. W. (2d) 1051, 1054, and quoted with approval in the Wigginton Case, supra, ''actionable negligence may be established by circumstantial evidence as well as by positive testimony, where it is sufficiently certain as to the proximate cause of the accident to authorize the submission of the case and upon which to rest a verdict of the jury,'' such right to a submission does not apply ''where the plaintiff's evidence and all reasonable inferences deducible therefrom merely constitute supposition or conjecture;'' that in such event the duty of the court would be to withdraw the case from the jury. ''It is not enough to prove negligence naturally resulting in the injury. Unless the proof connects the proven injury as a rational and proximate result of the proven negligence, there is nothing to be submitted to the jury.'' Cincinnati, N. O. & T. P. R. Co. v. Zachary's Adm'r, 106 S. W. 842, 843, 23 Ky. Law Rep. 678.

Here, after carefully reviewing the evidence and considering all the reasonable inferences deducible therefrom for the purpose of establishing the cause of action declared on in the petition, we, in the light of the applicable principles set out, supra, conclude that the appellant's evidence is "insufficient to induce a conviction as to what was the efficient or proximate cause of the injuries to and the tragic death" of John Strong. It is apparent, therefore, that it is our view that the trial court properly directed a verdict for the defendant city.

Judgment affirmed.