## Smith v. Dunning.

(Decided Dec. 6, 1938.)

734

McCANDLESS & McCANDLESS and FAUREST & FAUREST for appellant.

J. E. WISE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Mrs. Ollie Smith instituted this action in the Hardin circuit court against D. F. Dunning to recover damages for serious personal injuries, alleged to have been sustained by her as a consequence of his general and gross negligence in so operating his automobile as to run same into collision with her.

The defendant filed answer, denying the charge of negligence and pleading plaintiff's contributory negligence as a bar to the action.

Issues were joined by a reply, denying the plea of contributory negligence. Upon a jury trial, a verdict was rendered for defendant, when, the plaintiff having been denied a new trial, a judgment was entered thereon.

Plaintiff seeks a reversal of this judgment upon the following grounds: (1) That the verdict is flagrantly against the evidence; (2) for alleged errors in the instructions given by the court; and (3) misconduct of counsel for defendant.

For convenience, the appellant and appellee will hereinafter be referred to as plaintiff and defendant respectively, as it appears their positions were in the lower court.

The facts as disclosed by the record are, that Mr. Dunning, the defendant, is a man eighty-two years of age, who resides and does business in Grand Rapids, Michigan. On the morning of November 12, 1936, as he was driving alone in his coupe over the Dixie Highway, in Hardin county, en route to Florida, where it appears he is accustomed to spend his winters, his car came into collision with Mrs .Smith, painfully and seriously injuring her, and which she claims was caused by the careless and negligent manner in which he, at the time, was operating his automobile.

The plaintiff, Mrs. Smith, lives with her husband on a farm in Larue county, situated a short distance east of the Dixie Highway on a lane connecting it with the highway, which it intersects at a point, in its north and south course, in Hardin county. Further, it appears that on the west side and shoulder of the highway, extending some two and a half feet from its paved portion, and opposite the lane's entrance into the highway, the plaintiff maintains a mail box.

Plaintiff states that at about half past nine of the morning of November. 12, 1936, the day on which this collision accident occurred, she had come from her home down the lane to the highway to get her mail from this mail box and that, upon reaching the highway but before attempting to cross over to her mail box, she had stopped and looked in each direction, both to the north and south, to discover if there were then any near ap-

proaching cars; that she saw none approaching from the north, but did see three, then some 250 or 300 yards away, approaching from the south; that thereupon, the way being clear, she crossed over to the west side of the highway to her mail box, which she opened, found no mail, closed the box and was then about to return, when, before attempting to recross the highway, she again first looked up and down it, to see if the way were still clear, when she saw that not only were the three cars, before discovered approaching from the south, then near, but also another car, defendant's, coming toward her from over the hill, some hundred and fifty yards to the north, travelling at a high rate of speed; that upon discovering such was the then dangerous traffic condition of the highway, she did not try to cross, but stepped to the south side of her mail box, and a few inches in front of it, where she stood with her left hand resting on the mail box and her right foot and leg slightly extended toward the road, in which position she awaited the passing of the approaching cars. She further testifies that while she was thus standing on the shoulder of the highway, some two and a half feet west of the travelled part of the road, and the approaching cars were about to meet and pass in front of her, with ample clearance between their paths on the paved surface of the road, and just as or before the defendant's car came in front of her, he negligently swerved it to his right, from off the paved portion of the road, onto its shoulder where she was standing, causing it to run against her, its bumper striking and breaking her leg below the knee and the collision otherwise so terribly injuring her as to cause her to lose consciousness, which she did not regain until later when in the hospital, to which she had been instantly carried after the accident; that she remained in the hospital for some three months for treatment of her injuries, thereby incurring heavy medical and hospital bills, amounting to more than $2,500.

To recover damages in the sum of $52,741.35 for these grievous and permanent injuries suffered and inflicted upon her, she claims as a consequence of the defendant's negligent operation of his car, this suit was brought.

Plaintiff's version of the collision, and her testimony as to how it occurred, is corroborated by her eyewitness, Alfred Biglow, who testifies that he was driving nearby at the time when the accident occurred, and

saw it, and that the plaintiff did not, as testified by the defendant, rush headlong from where she was standing by the mail box into defendant's car, but on the contrary, that plaintiff had remained standing on the shoulder of the road by the mail box, as the defendant's and the three other cars were meeting and passing almost in front of her, when, as testified by her, the defendant's car had swerved to the right from its course and struck her.

The defendant, the only other of the three eye-witnesses to the collision, testifies that the plaintiff was standing to the side of the road as his car was approaching and passing the three cars meeting him, and at which he was looking as they passed, when suddenly he discovered the presence of the plaintiff in the highway some six feet ahead, as she, heedlessly and with head down, ran across the road into the side of his car, which he was driving on the west side, near the center, of the paved portion of the road and that appellant's body by the impact was knocked to and laid altogether upon its paved portion.

Other witnesses, who at once gathered about the place of the accident, attempt to relate the physical facts found by them, evidencing the circumstances and cause of the collision. They testify, in contradiction of the testimony of defendant, that they found the plaintiff lying not on the travelled part, but mostly on the west shoulder of the road, with only her head and shoulders resting upon the paved portion; that the door handle of defendant's car, broken by the impact, was found there, lying by her head; that her right slipper she was at the time wearing was torn by the blow and knocked some fifty feet beyond the point where she was struck. Further, they state that an indentation or scratch was made upon the shoulder of the road, as if by the heel of the slipper, due to the force with which her leg was struck.

The witness, Harold Wooten, testifies for the plaintiff that he arrived at the place of the accident but a few minutes after its occurrence and that he inspected defendant's car and detected only a small dent at the point of the right front fender, but that the door handle of the car was broken and gone and that there was no marks on the bumper indicating that it had struck anything.

Plaintiff insistently argues that these physical

facts given in evidence indisputably demonstrate how and where upon the highway this collision took place, and that the force and effect of such showing is to entirely destroy the testimony and contention of the defendant, that the accident did or could have occurred in any other way than was demonstrated by them. Also, her counsel argue that such being the physical facts, the crucial point is that it was impossible for the collision to have occurred as described by defendant; that plaintiff, a woman five feet seven inches tall, could not and did not strike the door handle, which was only forty inches from the ground, with her shoulder; that it would have been impossible for her to have done so when running across the road with her head down and into the car, as described by defendant.

For such reason, they contend that, while recognizing that this court is reluctant to set aside a verdict of the jury on the sole ground that it is against the weight of the evidence, nevertheless, it does not hesitate to reverse a judgment on the ground that the verdict is flagrantly against the evidence, which they contend these physical facts in evidence here clearly show it to be.

In support of this argument, that such is the rule and practice of the court, plaintiff cites and relies on the case, among many others, of Louisville & Nashville Railroad Company v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471, wherein is quoted with approval the rule announced in Elliott on Railroads (Second edition), section 1703, as follows [page 1043]:

"Well-established laws of nature, and similar well known scientific and physical facts of which the courts will take judicial knowledge, may not only justify a trial court in directing a verdict or in setting aside a verdict and granting a new trial, but may also be sufficient to cause the appellate court to reverse the action of the trial court, where it fails to give effect to such facts by directing a verdict or granting a new trial. Notwithstanding the general rule, which prevails in most jurisdictions, that the court on appeal will not weigh the evidence, neither the appellate court nor the trial court should stultify itself by allowing a verdict to stand * * * where the physical facts are such as to demonstrate that such evidence is untrue and the verdict unjust and unsupported in law and in fact."

While conceding that the general rule as to the evidential force of physical facts in such case is substantially as quoted supra, we are yet of the opinion that this rule invoked is here inapplicable for the reason that even conceding arguendo the verity of certain of the physical facts here presented and relied on by plaintiff, they are yet as consistent with the defendant's theory, as with that of plaintiff, as to the place and manner of the happening of the collision; or, in other words, the defendant's car could have struck the plaintiff in the same way and inflicted the same injuries whether it struck her when swerving into her, as she stood by the side of the road, or ran into her when she was out in the road, attempting to cross it.

Therefore, such being the testimony as to the place where the accident occurred, and the showing of the physical facts being not such as demonstrate that the defendant's evidence as to this is untrue, the case becomes merely one where the evidence is conflicting as to whether the defendant negligently ran into the plaintiff when standing off the road, as she contends, or the plaintiff suddenly appeared and ran heedlessly across the road into the defendant's car, as he contends. The evidence being thus conflicting as to how and where the accident occurred, the determination of these questions by such evidence rested solely with the jury and, in conformity with the long established and recognized rule, our duty in such case goes no further than to determine whether there is evidence to support its verdict, and our decision of that point is not to be controlled by our opinion as to whether its verdict is in accordance with or against the weight of the evidence.

While section 340, subsection 6, Civil Code of Practice, provides that "the former verdict or decision may be vacated and a new trial be granted, on the application of the party aggrieved * * * [where] affecting materially his substantial rights * * * the verdict or decision is not sustained by sufficient evidence, or is contrary to law," we have repeatedly held that this provision does not authorize us to award a new trial because the jury's verdict was against the weight and preponderance of the evidence, but only so authorizes us where it is palpably and flagrantly against the evidence. Louisville & I. Railroad Company v. Roemmele, 157 Ky. 84, 162 S. W. 547; Kincaid v. Bull, 159 Ky. 527, 167 S. W. 903.

We are, therefore, in view of this well-recognized rule, led to conclude that this objection urged so insistently by plaintiff is not to be sustained.

Next considering the second of appellant's contentions urged for reversal of the judgment, that the court erred in here giving a sudden appearance instruction, as well as that the form of the instruction as given was erroneous, in failing to include certain alleged essential qualifications of the rule.

In determining this question, we may helpfully first consider the evidence appearing herein as to which this instruction was directed.

Not only did the defendant say that when he came to the hill in the road, some twenty or twenty-five rods north of where the plaintiff stood, he had a clear and uninterrupted view of the road as he drove his car southwardly toward the point where plaintiff was standing at the mail box in a place of safety, but the plaintiff also states that she, after going to her mail box and starting to return, stopped, looked and saw defendant's car near the top of the hill, as it was being driven toward her at a high rate of speed, and also saw the three cars approaching from the opposite direction, and because of which she stopped and stayed in a place of safety at the side of the road until they passed by; also that she was standing in such position when the defendant swerved his car over to the side of the road where she was standing and struck her. The appellant's evidence, on the other had, was that the plaintiff did not remain standing in that place of safety at the side of the road, as testified by her, but heedlessly and recklessly, without looking and with her head down, suddenly rushed upon the road into the car of the defendant, and that it was her sudden appearance and contributory negligence in so doing that caused her injuries.

To cover both contentions, the court gave a contributory negligence instruction and one also giving the law covering the theory of the defendant, that the plaintiff appeared so suddenly in his path of travel that he was unable to avoid striking her with the means at his command.

The criticised instruction in substance told the jury that if it believed from the evidence that the plaintiff, Mrs. Ollie Smith, came out upon the paved part of the

highway, from the shoulder of the road or about the mail boxes, and appeared in the path of defendant's car so suddenly that he, in the exercise of ordinary care, could not have stopped his car or changed its course in time to have avoided injury to plaintiff with the means then at hand and under his control, had his car then been running at a reasonable speed, then it would find for the defendant.

Plaintiff criticises this instruction as being here uncalled for, where the defendant had testified that the view of the road ahead was unobstructed and there was nothing to conceal the presence of the plaintiff standing along the roadway, from which she might suddenly emerge when too late and too near the defendant's car for him to then avoid striking her, and that under such circumstances the sudden appearance instruction given was improper, but if not improper upon such ground, that it was yet improper in failing to include the alleged essential qualifications; that it was at the time the duty of the defendant to observe a lookout upon the highway ahead, and, if there were persons seen by him in the proximity of the pathway of his car, unless it was evident that they were aware of his approach and out of danger, to give warning signals, bring his car under control and regulate its speed and exercise ordinary care generally so as to avoid injuring them.

The plaintiff has admitted that she saw and was here aware of the approach of defendant's car and the defendant has somewhat confusedly also stated that he saw the plaintiff standing in a place of safety, out of the pathway of his car. Such being the evidence, counsel for plaintiff argue that no instruction was here called for on sudden appearance, even were the rule as contended for by plaintiff, in that the plaintiff had stated that she was aware, when standing in a place of safety beside the highway, of the approach of defendant's car.

The criticised instruction, as here given, was very similar to that given in the late case of Schulze Baking Company v. Daniel's Adm'r, 271 Ky. 717, 112 S. W. (2d) 1011, where the jury was told that the driver and owner of a truck were not liable for death of an adult pedestrian, in full possession of his faculties, who ran into the side of truck without having previously given any indication of intention to leave the sidewalk, where he had been observed by driver stooping over some

cans, because of driver's failure to signal his approach or slacken speed. In the Schulze Case we approved and adopted the rule laid down in Trainor's Adm'r v. Keller, 257 Ky. 840, 79 S. W. (2d) 232, 233, where we said:

> "A driver of an automobile is not required to anticipate that a pedestrian seen in a place of safety will leave it and get in the danger zone until some demonstration or movement on his part reasonably indicates that fact." 112 S. W. (2d) 1016.

See, also, the case of Fork Ridge Bus Line v. Matthews, 248 Ky. 419, 58 S. W. (2d) 615, as to whether it is appropriate to give a sudden appearance instruction, as it was there contended by the bus driver should have been given, in which we sustained the driver's contention, saying [page 616]:

> "It long has been the rule in this state that, where the injured person leaves a place of safety and steps, walks, or runs in front of an approaching vehicle so suddenly and so close to it that the driver, by the exercise of ordinary care with the means at hand, could not have avoided the accident if the vehicle had been running at a reasonable rate of speed, there is no liability." See, also, to like effect, Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S. W. (2d) 564.

It is our conclusion that the criticised sudden appearance instruction given in the instant case was in harmony with the rule approved and applied in the Schulze and Matthews Cases, from which it follows that we are unable to concur in plaintiff's contention made for a reversal of the judgment on this, her second ground.

The last objection urged for a reversal of the judgment relates to the alleged misconduct of counsel for defendant.

The misconduct complained of, as set out in the bill of exceptions, is as follows:

> "On the call of this cause for trial the defendant filed his affidavit for a continuance upon the ground of the absence of a witness, Florence Smith, among other grounds, and the court overruled said motion with the understanding that defendant could read the affidavit as to the testimony of Florence Smith;

that on the next day the defendant started to read the affidavit as to the testimony of the said Florence Smith and the attorneys for the plaintiff informed the attorney for the defendant that said Florence Smith was then present at court in a witness room and objected to the reading of the affidavit as her testimony for that reason. Thereupon the Hon. J. E. Wise, the attorney for the defendant, said in the presence and hearing of the jury in substance as follows: 'Tell her to come over here and I will talk to her. I do not suppose it will do any good. I suppose she is well coached by now.' To which statement of counsel the plaintiff objected and the court thereupon admonished the jury not to consider that remark, to all of which plaintiff excepted.''

Counsel for plaintiff urge that this conduct of defendant's counsel was so prejudicial and unethical as to entitle plaintiff to a reversal, even though the court did at the time admonish the jury not to consider the improper remark made, as same was insufficient to rectify the slur cast, that ''his witness had been tampered with and offering that as a reason for not introducing her.''

In support of this objection, plaintiff further argues that the defendant wanted a continuance of the case, as evidenced by the fact that, at the opening of the trial, he had moved therefor and filed an affidavit in support of his motion, from which it was apparent that in making the quoted insulting remarks, the defendant's counsel meant to prejudice the jury and to coerce the plaintiff into seeking a discharge of the panel, and that if this had been done, he would have been left in the same condition as he will be in if a new trial is now granted.

In conclusion, he submits that while ''each one of the three grounds of error urged is in and of itself reversible,'' yet certainly when the cumulative effect of all the grounds is considered, there must be no doubt as to the propriety of the relief sought of a reversal of the judgment.

We are again unable to concur in this conclusion, by reason of our having hereinabove first held that each of the two objections urged insufficient grounds for reversal, and in the further conclusion reached that this objection No. 3 is not to be sustained. While certainly

the slurring remark of defendant's attorney was altogether improper and not to be condoned as being a mere trifle, or as of trifling effect, yet even so, the same should not justify a departure from the rule, long established, that in such case, if deemed reversibly prejudicial and as having poisoned the minds of the jury against the plaintiff, her remedy was to move for a discharge of the panel, even if in so doing she played into the hand of the defending counsel.

Likely the misconduct of counsel, as such was, called not only for an admonition by the court, but also for a reprimand by the court, as perhaps more effectively potent to undo the mischief which the remark might have created in the mind of the jury against plaintiff or her counsel, as having tampered with his witness.

After having considered very carefully the whole record and perceiving no error to have been committed so prejudicial to the substantial rights of the plaintiff as to warrant a reversal of the judgment, the same is affirmed.