# R. B. Tyler Co. v. Cantrell.

Feb. 13, 1940.

Robert F. Vaughan and Lawrence S. Leopold for appellant.

McCandless & McCandless and H. L. Van Arsdale for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellee, E. L. Cantrell, Jr., recovered a judgment for $11,873 against the R. B. Tyler Company for personal injuries sustained in the course of his employment by that company and for medical and hospital expenses. The accident in which appellee was injured occurred in Richmond, Kentucky, on July 11, 1936. The appellant was engaged in oiling certain streets and highways in Richmond and Madison county, and had employed appellee as a helper to A. H. Ovesen to operate an oil distributor. Heavy asphalt road oil was used in the work, and, in order to pump the oil from the railroad tank car into the distributor and then spread it on the road, it was necessary to heat it. The distributor is mounted on a truck and consists of a steel tank, with a capacity of 650 gallons, and machinery and equipment for heating the oil and pumping it into the steel tank and then spraying it on the road. The tank is penetrated longitudinally by two sets of flues, and the heat is applied at the lower openings of the flues by burners. Hot gas is generated from kerosene sprays, passes through the flues and softens the heavy asphalt oil and thus makes it possible to force it downward through the spray bars. The fuel used is kerosene, usually mixed with gasoline, and is in a tank on the left side of the distributor. A portable burner is carried in a rack on the side of the distributor, and is used to heat certain connections in order to start the pump which lifts the oil from the railroad car into the distributor. This portable burner is fed from the fuel tank containing the mixture of kerosene and gasoline. At the rear of the distributor is a pump operated by a gasoline engine and used to pump the oil from the tank car. Appellant had installed a Ford motor for this purpose on a frame built on the rear of the truck and just to the rear of the burners. On

the top of the motor was a small tank containing gasoline. On the morning of July 11, 1936, between 6 and 7 o'clock, Ovesen and appellee drove the distributor to the railroad siding in Richmond, where a tank car of road oil was located. They parked the truck carrying the distributor along side the tank car, and made the connections necessary to pump the oil from the tank car into the distributor. They heated the connections with the portable burners to start the pump, and, after the distributor was about half full of oil, one of them lit the burners to heat the oil in the tank preparatory to spraying it on the road. They were standing with their backs to the distributor when they heard a roar. Apparently there was an explosion, and both men were sprayed with burning kerosene and gasoline. Their clothes ignited, and both of them were severely burned. They were taken to the hospital in Richmond where they remained for nearly two months under the care of two physicians. Appellee received third degree burns on his legs and back, and there is medical proof that his injuries are permanent. On this appeal appellant insists that the evidence was not sufficient to establish negligence, and that its motion for a directed verdict in its favor should have been sustained. It also complains of the instructions.

Appellant operated under the provisions of the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., but neither appellee nor Ovesen had signed the register. Appellee had been employed by the R. B. Tyler Company about two weeks, and his failure to sign the register was due apparently to oversight on the part of the foreman having charge of it. On July 22, eleven days after the accident, an adjuster for appellant's insurance carrier went from Louisville to Richmond and interviewed appellee and Ovesen for the purpose of ascertaining whether or not their injuries were compensable. After his return to Louisville, he learned that appellee had never signed the compensation register, and on August 4, 1936, he returned to Richmond, went to the hospital where appellee was a patient, obtained his signature to the compensation register and to a compensation agreement upon form No. 4 of the Workmen's Compensation Board, and a receipt for two weeks' compensation at $11.70 a week upon form 17. He left a check for $23.40. which was never cashed.

These forms 4 and 17 were also signed by appellant and its insurance carrier and filed by them with the Workmen's Compensation Board. Appellee repudiated this transaction at once, and on October 13, 1936, brought this action in the Jefferson circuit court to recover damages for the injuries sustained by him. In paragraph 4 of its answer, the R. B. Tyler Company alleged that the plaintiff had elected to accept the provisions of the Workmen's Compensation Act by signing the notice of acceptance provided for by Section 4957 of the Kentucky Statutes, and that the Workmen's Compensation Act provided him with an exclusive remedy. In his reply to this paragraph of the answer, the plaintiff denied that he had accepted the provisions of the Workmen's Compensation Act. Much proof was heard relative to the circumstances attending the signing of the compensation register by appellee. It was shown that he suffered excruciating pain for several weeks after entering the hospital, and was kept under the influence of opiates. The weight of the evidence supports his claim that he was mentally incapable of transacting any business at the time he signed the register, and that he did not comprehend what he was doing. This question was submitted to the jury, and they were told that Cantrell had signed the register and to find for the defendant unless they believed from the evidence that, at the time Cantrell signed the register, because of suffering, mental and physical, or as the result of drugs administered to him in the treatment of his case, he was in such mental condition that he did not know and could not understand and appreciate what he was doing. It is not seriously contended that the evidence is insufficient to sustain the jury's finding on this point.

Much stress is put on the fact that the distributor in question was of the Etnyre type which contractors throughout the country recognize as one of the best that is manufactured. It was purchased by the R. B. Tyler Company in 1922, and was returned to the manufacturer and completely rebuilt in 1923. It had been in constant use since that time. It appears, however, that some time before the accident the distributor was changed and re-assembled by appellant in its repair shop. As originally assembled, the motive power for the pump at the rear of the distributor was generated by the truck engine, which was far removed from the burners. Appellant

substituted for this motive power a Ford motor as an auxiliary unit which was placed at the rear of the distributor and only a short distance from the kerosene burners. A small oval tank was placed just above the engine and just to the rear of the burners. This tank contained the gasoline used to operate the auxiliary motor which furnished the motive power for the pump. There was proof that frequently there were backflashes from the burners, and that the gasoline tank was in the path of these flashes. Attached to the bottom of the gasoline tank was a glass settlement bulb, and this often became loosened by the jostling of the truck, and gasoline leaked from it and ran onto the carburetor. When this happened, it was necessary to tighten the set screw with which the bulb was held to the tank. A few weeks before the accident, the auxiliary unit had caught fire while being used in Alabama, and after appellee was employed he had been compelled to jump from the rear of the distributor on one occasion because of the backflash from the burners. Ovesen and Cantrell were facing away from the distributor when the explosion occurred, and they were unable to describe the fire, but another witness who was present saw the flame enveloping the distributor, the side of the tank car, and the Ford motor. Gasoline flowed under the machinery and ignited. There was proof that the gasoline tank over the Ford motor was in a condition which indicated that an explosion had occurred. The seams were unsoldered so that a lead pencil could be inserted in places, and the tank was bulged outwardly. There was no shield or guard between the motor and the burners. The mechanic who repaired the gasoline tank testified that the distributor cap, the radiator, glass settling bulb, and all wiring were destroyed. We think there was an abundance of evidence from which the jury might reasonably infer that the equipment, as assembled at the time of the accident, was unsafe, and that appellee's injuries resulted from appellant's negligence in failing to furnish him with safe machinery with which to work. The facts of this case do not bring it within the rule that the jury will not be permitted to base its finding on surmise, speculation or conjecture. While negligence will not be presumed and must be proved as any other fact, yet it may be proved by circumstantial evidence. Louisville & Nashville Railroad Company v. Snow's Adm'r, 235 Ky. 211,

30 S. W. (2d) 885; Park Circuit & Realty Co. v. Ringo's Guardian, 242 Ky. 255, 46 S. W. (2d) 106; Carey-Reed Company v. Hart, 245 Ky. 325, 53 S. W. (2d) 689.

"Negligence may be inferred from circumstantial evidence of an accident, which, in the usual and ordinary course of things, would not have happened with proper care, and in such cases the burden is cast on the defendant to explain the accident or to show freedom from negligence." Illinois Central Railroad Company v. Frick, 256 Ky. 317, 76 S. W. (2d) 13, 15.

As was said in Wilder's Adm'r v. Southern Mining Company, 265 Ky. 219, 96 S. W. (2d) 436, 440:

"It is within the familiar rule that where the proven facts or circumstances are such from which it can be properly inferred, with reasonable satisfaction to the mind, that the act sought to be established, occurred or was committed, is sufficient to authorize the submission of the issue to the jury."

Appellant argues that the instructions are too general. In instruction No. 2 the court told the jury, in substance, to find for the plaintiff if they believed from the evidence that there was a defect in the oil distributor or in the equipment used in its operation, and that because of such defect, or defects if they existed, the equipment was not in a condition that was reasonably safe, and that because of such condition, if it existed, there was a flareback or an explosion resulting directly from the condition and Cantrell was thereby injured. This instruction submitted the real issue in the case, and was sufficiently specific and concrete. The instructions were more favorable to appellant than those to which it was entitled, since they submitted the questions of assumed risk and contributory negligence.

Some complaint is made of the opening statement of the plaintiff's attorney in which he referred to the anticipated failure or refusal of the two physicians who had treated plaintiff to testify, and of his closing argument in which he referred to the benefits plaintiff would have received under the provisions of the Workmen's Compensation Act by the proposed settlement. Even though it be conceded that the statements were improper, they could not have been prejudicial. Furthermore,

the court sustained the defendant's objection to the alleged improper statement of plaintiff's attorney in his closing argument, and defendant apparently was satisfied with this ruling as he neither took an exception nor moved the court to discharge the jury. Smith v. Dunning, 275 Ky. 733, 122 S. W. (2d) 781.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.