## Kelly v. Walgreen Drug Stores.

March 26, 1943.

Woodward, Dawson & Hobson for appellant.

E. J. Hogan and Edwin O. Davis for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Between 6:00 and 6:30 o'clock P. M., on January 15, 1941, appellant and plaintiff below, Ada Kelly, while walking on the sidewalk in front of the drug store of appellee and defendant below, Walgreen Drug Stores, at 1591 Bardstown Road in Louisville, Kentucky, fell on the sidewalk, whereby she sustained serious injuries. On December 31 of the same year (lacking only sixteen days of being one year from the date of her accident) she filed this action against defendant to recover damages she sustained, which she placed at $2,980. In her petition she alleged that defendant, its agents or servants "placed or permitted its paste or mucilage" to be upon the sidewalk in front of its store which rendered it dangerous and unsafe, and by reason thereof she slipped and fell, by which she sustained her injuries. The court overruled a demurrer filed to the petition, and in defendant's answer the material allegations thereof were denied, followed by a plea of contributory negligence, which was denied by a reply—thus forming the issues. At the close of plaintiff's proof the court sustained defendant's motion for a directed verdict in its favor, which was done by the jury and the petition was dismissed, to reverse which this appeal is prosecuted.

It will be perceived that plaintiff's petition specifically alleged that the dangerous substance on the walk was paste or mucilage, and that its presence thereon was the fault of defendant. The question presented by the appeal is purely a factual one, i. e., (a) whether or not any paste or mucilage was upon the walk at the time plaintiff fell, and if so (b) whether defendant was responsible for its presence at that place and time?

Considering first the determination of fact (a) it should be stated that no witness introduced by plaintiff testified to having examined the spot on the sidewalk where she fell and discovered thereon either of the substances which she alleged caused her to fall; but there

was circumstantial proof introduced in an effort to show that only one (paste) of the charged substances was on the walk at that point. That testimony was, that plaintiff was wearing a cloak which she testified was clean, with no foreign substances of any kind on it. The cloak was removed from her person immediately following the accident. She was first carried into the drug store and from thence to her home, where she says she contracted pneumonia, and later was carried to the hospital. In February following her accident, and after she recovered from the attack of pneumonia, she discovered some sort of spot on her cloak on its lower left side upon which she fell, and which, it is insisted, was produced by one or the other of the dangerous substances alleged in the petition to have been on the walk at the time she fell, and which plaintiff testified was not there before she sustained her injuries.

In September 1941, eight months after the accident, plaintiff's witness, Ben Kitten, a barber—whose place of business was about half a block from defendant's drug store—procured from the latter some paste which was delivered to him by the porter of the drug store, Robert Baker. That procurement was at the request of an attorney of the Louisville bar by the name of Head, who seems to have then been engaged in preparing this action on behalf of plaintiff. The paste so obtained by the witness, Kitten, was delivered to Head and he in turn procured another witness for plaintiff, Frank Doetzger, to spread some of that paste on a side walk in the business portion of the city and to rub one of the sleeves of plaintiff's cloak in it, which made a similar spot thereon to the one first above described. The testimony, as so related, is all there is in the record to prove that either of the alleged slick substances was on the walk where plaintiff fell. No peculiar or distinctive appearance or condition was shown by any testimony that the spots on the cloak could be produced only by paste or mucilage so as to exclude any hypothesis that they might have been produced by some other substance. Neither was there any testimony to show that the cloak between the time of the accident and when plaintiff discovered the spot thereon did not become soiled as plaintiff discovered it about one month after her accident. There was also no testimony to show that the mucilage obtained by the witness Kitten, months after the accident, was

of the same kind and quality used by defendant (as hereinafter described) at the time of the accident. It is, therefore, our conclusion that fact (a) supra, depends so much on surmise, stipulation and suspicion as to rob it of that degree of probative force necessary to support the principal fact alleged in the petition—i. e., that the paste or mucilage which plaintiff alleged caused her to fall was on the walk at that time, and which conclusion is supported by the fact that no witness testified to having seen the substance on the walk at the time; and which brings us to a consideration of fact (b).

The testimony of but one witness is necessary to be considered in the determination of fact (b). That witness is Robert Baker, who was introduced by plaintiff. He was the porter at defendant's drug store and had been serving as such for quite a number of years. A part of his duties was the pasting of advertisements on the front windows of the drug store, which he performed twice per week, on Monday and Friday. Plaintiff's accident happened on Wednesday, following the described pasting service by the witness on the preceding Monday morning. He used a table or boarded platform the size of a table of the dimensions of one he pointed out in the court room while testifying. He placed thereon the advertisements he intended to paste on the windows and with a brush about an inch or an inch and a half wide he applied the paste around the outer edges of the advertisements which he later placed on the windows inside of the drug store. The paste was in a tin container about the size of "a Maxwell House coffee can," with only a small portion of the paste in its bottom. No testimony was given to show that he spilled on the sidewalk any of the paste, or any of his advertisements upon which he had placed any of the paste, either on the preceding Monday or at any time prior thereto. Witness stated that it was raining on the day plaintiff was injured. He had left the drug store about an hour previous to the accident, and stated that the sidewalk was wet at that time from rain that had fallen that day, although plaintiff testified that the side walk was not wet and that it was not raining at the time she fell.

However, plaintiff introduced J. H. Kendall, who has charge of the weather bureau in Louisville, and he testified that on January 15, 1941, "Rain began in the

morning at two minutes after 5:00 o'clock and ended at 11:35 A. M. Began again at 12:50 P. M., and ended at 1:45 P. M. Began again at night at 9:30 P. M. and continued until midnight.'' He also testified that his records showed no rainfall other than as stated above. He gave no testimony as to the rainfall between Monday morning, when the last pasting of advertisements was made, and the morning of the day of the accident which embraced the previous Monday night, Tuesday and Tuesday night. We gather from the testimony—of which also we might take judicial knowledge—that a substance like paste that the witness Baker used on the occasion, and for the purpose above described, was more or less easily dissolved and eradicated from solid surfaces by water, since Baker testified that in removing advertisements from the windows of defendant's drug store the remaining paste thereon was easily removed by a wet brush or rag. Therefore, if the witness Baker did, perchance, spill or drop some of the paste on the last morning on which he performed such services there would appear to have been sufficient rain fall to have dissolved it long before the time of plaintiff's accident. We, therefore, have a case where the establishment of both of two facts is essential to hold defendant liable, and where the testimony to establish either of them is purely circumstantial.

It readily will be admitted that proof of circumstantial facts of sufficient probative tendency to prove the principal fact will authorize a submission of the contested issue to the jury and to sustain its verdict finding such principal fact to be true. Three of our opinions so holding—and the ones relied on by counsel for plaintiff in their brief—are, Perry's Adm'x v. Inter-Southern Life Insurance Company, 248 Ky. 491, 58 S. W. (2d) 906; Illinois Central Ry. Company v. Frick, 256 Ky. 317, 76 S. W. (2d) 13, and R. B. Tyler Company v. Cantrell, 281 Ky. 718, 137 S. W. (2d) 401. They but follow the universal rule as set forth by text writers, and courts of other jurisdictions, as is illustrated in the text of 38 Am. Jur. 1032, Section 333, which says, inter alia: ''Hence, negligence may be inferred from all the facts and attendant circumstances in the case, and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts, a prima facie

case is made. The causal connection between an agency and the injury complained of need not be shown by direct evidence. Evidence as to the length of time that a peril existed is sufficient to justify a finding that the defendant had notice thereof. But this inference must be based on a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them. It is necessary that there be some evidence indicative of negligence in the circumstances surrounding an occurrence.''

To the statement in that excerpt saying, "But this inference must be based on a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them,'' there is cited many cases, including that of Nelson v. West Coast Dairy Company, 5 Wash. (2d) 284, 105 P. 76, 130 A. L. R. 606, which held—in line with our opinions dealing with the same question—that the circumstantial proof adduced and relied on need not be of the degree to expel all other probabilities but it will be sufficient to submit the issue to the jury, and to sustain its verdict based thereon, if it coincides with logic and reason, and which a reasonable mind would conclude from the testimony adduced. At the same time the authorities—both text and court opinions—are unanimous to the effect that if the proven circumstances go no farther than to create a surmise or suspicion that the principal fact occurred, then there is a failure of proof, and the court should so direct the jury.

Here, both facts (a) and (b) supra, are each based on inferences, with express testimony contradicting each of them, and the circumstances so proven fall far short of convincing force as did those appearing in the three cited cases supra, exclusively relied on by plaintiff's counsel, as will be verified by reading those opinions, the facts of which developed situations from which no reasonable conclusion could be drawn, other than the guilt of defendant of the negligence charged against him. The proof heard shows that fact (a) supra was largely if not completely disproven, since the intervening time between the last pasting service performed by the porter, and the happening of the accident, was sufficient to either dry the paste that he may have spilled on the walk, or for rain to have removed it therefrom if he did so spill it, or otherwise left it there. Nor did the

test of the stain on plaintiff's cloak possess any more probative force than a conjectural surmise that the stain first put upon her cloak was made on the occasion of her fall. Therefore, in order to establish the existence of the presence of paste on the sidewalk when plaintiff was hurt it must be inferred that defendant's agent put it there forty-eight hours before the accident and that it retained its slippery quality thereafter up to that time. To prove that fact the inference must be indulged that the stain on plaintiff's cloak was paste put on the walk purposely, or through the negligence of defendant's servant, and remained there until the time of the accident.

In order to establish fact (b) supra, it must first be inferred, not only that defendant's servant in some manner caused the paste to be put upon the sidewalk, but also that the additional inference be indulged that it remained there—retaining its slippery quality until the accident occurred—and which presents a case practically on all fours with that of Siemer v. Chesapeake & O. Ry. Company, 180 Ky. 111, 201 S. W. 469, wherein the negligence charged was sought to be proven by drawing an inference based upon other inferences, and which we held could not be done. The doctrine of that opinion has been followed by a number of others to the same effect, some of which are listed in volume 14 of West's Kentucky Digest and supplement thereto under the subject Negligence, key 134(2d), among which is Strong v. Harlan, 267 Ky. 454, 102 S. W. (2d) 353. The opinion in the Siemer and Strong cases—which are supported by foreign opinions and text writers—clearly demonstrate that the circumstantial testimony in this case created at best no more than a surmise or suspicion that either of the two facts mentioned occurred as alleged by plaintiff in her petition, and the court did not err in so holding.

Wherefore, the judgment is affirmed.