**Joy A. GRANT, Appellant,**

v.

**Theodore S. WRONA and Lorraine L. Wrona, Appellees.**

Court of Appeals of Kentucky.

Dec. 23, 1983.

---

Patricia A. Lewis, Elizabethtown, Elaine C. Duncan, Louisville, for appellant.

Thomas Stuart McCloy, Lewis, Bland & Preston, Elizabethtown, for appellees.

Before HAYES, C.J., and HOGGE and WHITE, JJ.

HAYES, Chief Judge.

On June 20, 1981, the appellant, Joy Grant, entered into a contract for deed for the purchase of a lot and house owned by the appellees, Theodore and Lorraine Wrona. The terms of the contract called for a total purchase price of $40,500.00 and a down payment of $15,000.00. An action to rescind this contract was commenced by the appellant on October 7, 1981, slightly more than three months thereafter. In her complaint, she alleged that the property had major structural defects which the appellees had concealed from her. She asked for the return of her down payment, damages incurred for moving, attorney's fees and punitive damages. On March 20, 1982, she filed an amended complaint, pleading in the alternative for damages of $20,000.00 to repair the property. She elected at trial however to seek the remedy she originally requested, that of rescission of the contract.

The matter was tried before a jury on October 29, 1982. At the close of the appellant's case, the appellees moved for and were granted a directed verdict. The trial court ruled that there was insufficient evidence, as a matter of law, to prove that the appellees had concealed or suppressed any condition of the house, or that they had any knowledge of any defects that had not been repaired. The trial court also concluded

that appellant was not entitled to the relief sought as she had not offered to return the property to the Wronas prior to filing her complaint.

Our review of the evidence presented at trial indicates that the appellant did present evidence sufficient for a jury determination of the issues presented and that appellees' motion for a directed verdict should have been overruled. The only question to be determined by the court on a motion for directed verdict is whether the plaintiff has sustained the burden of proof by "more than a scintilla of evidence," that is, has the plaintiff submitted "evidence of probative value having fitness to induce conviction in the minds of reasonable men?" *James v. England,* Ky., 349 S.W.2d 359, 361 (1961). *See also, Louisville & N.R. Co. v. Chambers,* 165 Ky. 703, 178 S.W. 1041 (1915). In so ruling, "The court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion, and a verdict should not be directed unless the evidence is insufficient to sustain the verdict. The evidence of such party's witnesses must be accepted as true." 7 Clay, *Kentucky Practice,* CR 50.01, (3rd Ed.1974). It is well settled that circumstantial evidence "will authorize a submission of the contested issue to the jury," and is capable of sustaining its verdict. *Kelly v. Walgreen Drug Stores,* 293 Ky. 691, 170 S.W.2d 34 (1943). Further, "it is not necessary that direct evidence of fraud be adduced" as "fraud may be established by evidence which is wholly circumstantial." *Johnson v. Cormney,* Ky.App., 596 S.W.2d 23 (1979).

The evidence presented by the appellant showed two major defects existed in the house at the time of purchase. First, much of the wood siding on the rear addition to the house added by the appellees, was so rotten and soft that appellant's expert witness, Cordelle Tabb, was able to insert his pocket knife into the siding with little effort. Appellant testified that this condition was concealed prior to purchase by a fresh coat of paint. Mr. Wrona admitted that he, himself, had applied the paint

to the weather boarding immediately prior to putting the house on the market and shortly before appellant looked at the house. Harold Cox, an architect, testified that the deteriorated condition of the wood was due to the fact that it had been wet "for a long period of time." Mr. Wrona, however, testified that the wood was in "excellent" condition. Certainly the jury could reasonably infer from the evidence of the condition of the wood presented by the appellant and her expert witnesses, and the fact that it had been painted very recently by the appellee, Mr. Wrona, that the appellees knew of the defective condition despite their protests to the contrary. A fact issue was clearly established and the credibility of the witnesses was a matter wholly within the province of the jury. *Cochran v. Downing,* Ky., 247 S.W.2d 228 (1952).

The more serious defect discovered by the appellant soon after she purchased the property was the severely rotten condition of the floor joists under the house and the sill plate at the top of the foundation. Mr. Cox testified that the rot and fungus had spread throughout the wood joists, causing them to lose their structural property. He opined that the rot, dry at the time of purchase, was caused over a prolonged period by improper ventilation in the crawl space and the lack of a vapor barrier creating excess moisture. The appellees, the original owners of the house, testified that they did not know the joists were rotten; that they did not conceal the joists from the appellant; and in fact, that appellant took a flashlight and looked inside the crawl space opening prior to purchase; that to their knowledge any problems caused by the closed ventilation and lack of a vapor barrier, conditions they admitted existed under the house from the time the house was built in 1973 until 1979, had been repaired. In 1979, Mrs. Wrona noticed the floors were sagging and receding from the wall. She notified the original builder who discovered that the central beam was cracked. The appellees instructed him to repair the beam, install a vapor barrier and open the vents. According to the appellant's experts, those

repairs corrected the problem of excess moisture but did nothing to stop the spread of rot. Considering the length of time the problem with the joists existed, the repairs the appellees had made, and the serious and extensive nature of the problem, the jury could have inferred that the appellees had knowledge of the defect. As this court has previously reasoned, "even though each bit of circumstantial evidence in and of itself may seem trivial and unconvincing, the combination of all the circumstances considered together may be decisive in a given case of fraudulent design." *Johnson v. Cormney, supra* at 27.

The fact that the appellant looked in the crawl space opening did not absolve the appellees of the duty to put her on notice of the defective condition of the joists. The testimony revealed that the rotten condition could only be discovered by actually inspecting the joists by crawling inside the crawl space. Thus, we hold the defect was not discoverable by the exercise of ordinary diligence. On remand, should the jury find that the appellees had knowledge of the defective condition of the joists, such finding will support a conclusion that their silence concerning the defect constituted fraud. *Kaze v. Compton,* Ky., 283 S.W.2d 204 (1955); *Bryant v. Troutman,* Ky., 287 S.W.2d 918 (1956); and *Hall v. Carter,* Ky., 324 S.W.2d 410 (1959).

We now turn to the question of whether the failure of the appellant to offer to return the property to the appellees prior to filing her complaint required dismissal thereof. There was no evidence presented that the appellant offered to rescind the contract or relinquish control of the property prior to filing her complaint. Therein, however, she did not allege that the contract had been rescinded; instead, she asked for a legal determination that rescission was the appropriate remedy under the circumstances. The complaint clearly put appellees on notice, within a reasonable time after the transaction, that the appellant desired to rescind the contract and return the parties to the status they maintained prior to the entry thereof. The

tender in the complaint was a continuous one. The appellees have not produced any evidence that they were prejudiced by the failure to make this tender before the institution of the suit, or that they would have accepted the offer if it had been made. Therefore, we hold the tender in the complaint is sufficient to sustain the action for rescission. *See, Shields v. Lewis,* 20 Ky.L. Rptr. 1601, 49 S.W. 803, 805 (1899).

In *Webb v. Verkamp Corp.,* Ky., 254 S.W.2d 717 (1953), our highest court set forth the following rule concerning the recovery appropriate in fraud cases:

Where fraud has been committed in the obtaining of a contract, it may be taken advantage of in two forms: (1) By an affirmance of the contract and a recovery of damages for the injury; (2) by a disaffirmance of the contract and a recovery of the thing parted with as the consideration. By the latter, the contract is treated as a nullity. This mode can only be adopted upon certain terms; those terms are: That he surrender or tender a surrender within a reasonable time to the other contracting party the thing which he has received under the disaffirmed contract. He is not permitted to hold on to the thing which he has received and successfully effect a restoration of the thing which he has parted with under the contract.

We do not interpret this rule, as the trial court, to require that the tender occur prior to the filing of a complaint or that the one seeking rescission must abandon the property during the pendency of the legal dispute. Further, the facts in the case at bar are clearly distinguishable from those in the case of *Hampton v. Suter,* Ky., 330 S.W.2d 402 (1959), relied upon by the trial court. In the *Hampton* case *supra,* the buyer who desired to rescind a contract for the purchase of an automobile agency, "retained and operated the business for some time *after* he learned or had ample opportunity to learn the true state of facts," thus evidencing an intent to ratify the contract. *Id.* at 404. Further, he entered into a "sham partnership transaction" with the

seller, after learning of the seller's alleged fraud, with the intent of deceiving another. *Id.* There is no evidence in the record before us to indicate that the appellant took any action after learning of the property's defects which could be construed as an intent to ratify the contract. To the contrary, she has consistently sought the return of her down payment and to return the property to the Wronas.

The trial court also cited *Massachusetts Protective Ass'n v. Stephenson,* 5 F.Supp. 586 (E.D.Ky.1933), in support of its ruling that a tender of the property was a condition precedent to seeking rescission of the contract. However, that court merely held that, "in a suit in equity to rescind a transaction on the ground of fraud, an offer must be made *in the bill* to restore what plaintiff has received." *Id.* at 595. Cited therein is *Twin Lakes Land & Water Co. v. Dohner,* 242 F. 399 (6th Cir.1917) wherein the following was held:

> Where the controversy relates to land, it is not necessary that plaintiff should abandon it pending suit and leave the buildings to destruction and the land to be injured by nonuse. It is enough if the defendant, on performing his part of the decree of rescission, may receive back what he parted with, subject to any equitable adjustment that may be ordered.

*See also, Tarkington v. Purvis,* 128 Ind. 182, 25 N.E. 879 (1890) and *Barke v. Grand Mobile Homes Sales, Inc.,* 6 Mich.App. 386, 149 N.W.2d 236 (1967).

The judgment of the Hardin Circuit Court is hereby reversed and remanded for proceedings not inconsistent with the opinion of this court.

All concur.